**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RADIAN INSURANCE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO.  08-2993 |
| DEUTSCHE BANK NATIONAL TRUST | : | |
| COMPANY, et al. | : | |

**MEMORANDUM RE: MOTIONS TO DISMISS AND MOTIONS TO STAY**

**Baylson, J.**                                                                    **July 15, 2009**

This case arises from a dispute over three insurance policies issued by Plaintiff, Radian

Insurance, Inc. ("Plaintiff" or "Radian") to Defendant Deutsche Bank National Trust Company

("Deutsche Bank").  Presently before the Court is a Motion to Dismiss for failure to state a claim,

filed by Deutsche Bank.  Also before the Court are Motions to Dismiss, or In the Alternative,

Stay Pending Arbitration, filed by Defendants Financial Guaranty Insurance Company ("FGIC"),

Ambac Assurance Corporation ("Ambac"), and MBIA Insurance Corporation ("MBIA")

(hereinafter, collectively, the "Certificate Insurers").   In addition, Radian has filed a Motion to

Stay the arbitrations.  For the reasons set forth below, this Court will grant the Certificate

Insurers' Motions to Stay Pending Arbitration, in part, and deny Deutsche Bank's Motion to

Dismiss, without prejudice, as well as Radian's Motion to Stay the arbitrations.

**I.      Background Information**

**A.      Facts**

Plaintiff filed its Complaint seeking a declaratory judgment to establish its right to

rescind the three Insurance Policies (the 2006-2B Policy, 2006-3 Policy, and 2007-1 Policy;

-1-

collectively, "the Policies") it had issued to Deutsche Bank.  Plaintiff asserts it is entitled to

rescission because Deutsche Bank allegedly breached certain warranties made therein or

otherwise made fraudulent misrepresentations.

Each of the Policies at issue insured individual mortgages, which were originated by

IndyMac and then bundled or pooled together into a corresponding trust (the 2006-2B Trust,

2006-3 Trust, and 2007-1 Trust; collectively, the "Trusts") pursuant to a Pooling Agreement

between Deutsche Bank and Defendants IndyMac MBS and Indymac Bank, F.S.B.  (Compl. ¶¶

17-18, 20-21, 24-25).  Deutsche Bank, the named trustee of the Trusts, issued certificates from

the Trusts, backed by the mortgages in the pool, and sold those certificates, called Home Equity

Mortgage Loan Asset Backed Certificates, to investors.  (Compl. ¶¶ 19, 22, 26).  Defendant

IndyMac MBS was the depositor for the Trusts and Defendant IndyMac Bank, F.S.B. was the

sponsor, seller, and servicer of the Trusts.  (Compl. ¶ 17).  The Federal Deposit Insurance

Corporation ("FDIC") intervened in this suit once it was appointed Receiver for IndyMac MBS

and Conservator for IndyMac Federal Bank, F.S.B.[1]  (Doc. 5).

Under the Policies, Deutsche Bank would submit claims for defaulting mortgages to

Plaintiff, and Plaintiff would then undertake an adjustment process to determine if the loan

complied with the warranties and representations in the Policies.  (Compl. ¶ 35).  Those

---

[1]In their respective memoranda, the parties identify various different IndyMac entities as originator of the loans, depositor of the Trusts, and sponsor, seller, and service of the Trusts.  The specific IndyMac entity assigned to each of those roles is not consistent among the memoranda submitted by the different parties.  However, the identity of the IndyMac entities, and their individual roles in the securitization process, is not particularly relevant or important to the Court's decision regarding the arbitration.  As a result, for purposes of this decision, the Court has relied on the description of the IndyMac entities set forth in the Complaint and the Plaintiff's memorandum.  The Court will request the parties to clarify this issue with more specific information in subsequent filings.

representations and warranties, referenced in § 2.3 of the Policies, pertain to the loans'

conformity with the underwriting guidelines and with other coverage eligibility requirements.

(Compl. ¶¶ 39-41, 47).  If the defaulting loan satisfied the conditions for coverage set forth in the

Policy, Radian would cover the loss for Deutsche Bank.  (Compl. ¶¶ 32-35).  However, if the

defaulting mortgage did not meet the conditions for coverage, it was ineligible under the Policy,

and Radian could refuse to cover any loss resulting from that loan defaulting.  (Compl. ¶ 36).

For each Trust, the Policies required that the total amount of loss from eligible defaulted loans

exceed an agreed upon deductible amount before Radian would begin paying Deutsche Bank for

the loss.  (Compl. ¶ 32).[2]

 In addition to the insurance issued by Plaintiff for the underlying mortgages, each

certificate issued from the Trusts was insured by a secondary insurer.  FGIC provided coverage

for the 2006-2B certificates; Ambac provided coverage for the 2006-3 certificates; and MBIA

provided coverage for the 2007-1 certificates.  (Compl. ¶¶ 28-30).  Each of those insurance

companies (collectively, the "Certificate Insurers") was named as a third-party beneficiary under

the corresponding insurance policy between Radian and Deutsche Bank.  (Compl. ¶¶ 28-30).

 In its Complaint, Plaintiff alleges that "through the adjustment process, Radian has

determined that an extraordinarily high percentage of the claims tendered by the Insured for

---

[2]The three Policies varied slightly in terms of the amount insured, Plaintiff's liability, and
the deductible amount.  The 2006-2B Policy insured loans worth $570,860,369.  However,
Plaintiff was only liable for up to $83,345,613 in losses from defaulted loans and the deductible
was $54,231,735.  (Doc. 1, Ex. A).  Similarly, the 2006-3 Policy insured loans worth
$566,553,132.  Plaintiff was liable for up to $81,866,928 in losses from defaulted loans and the
deductible was $54,955,654.  (Doc. 1, Ex. B).  Finally, the 2007-1 Policy insured loans worth
438,994,155, but Plaintiff was only liable for up to $66,946,609.  The deductible for that Policy
was $46,094,386.  (Doc. 1, Ex. C).

coverage under the Policies relate to Loans that do not conform to the applicable representations and warranties." (Compl. ¶ 44). Plaintiff then alleges that "the extremely large proportion of Loans subject to rescission or denial indicates that the representations and warranties were materially false when made." (Compl. ¶ 45). Plaintiff suggests that it relied on those warranties and representations, which concerned the loans' eligibility for coverage, when agreeing to the Policies and determining the premiums it would pay. (Compl. ¶¶ 46, 67-70). Accordingly, Plaintiff argues that the entire Policies should be rescinded on the grounds of either fraud, mistake or breach of warranty, (Compl. ¶¶ 74, 82), though Plaintiff asserts breach of warranty as its primary ground for rescission, (Pl's Response to Ambac's Motion to Dismiss, Doc. 66 at 9-11;[3] Hr'g Tr. Pg. 23).

After Plaintiff filed its Complaint, the Certificate Insurers made demands for arbitration to determine the eligibility for coverage of certain defaulting loans that were denied by Plaintiff in its adjustment process. The Certificate Insurers then filed in this litigation Motions to Stay Pending Arbitration, attaching their demands for arbitration as exhibits. (Doc. 33; Doc. 38-3; Doc. 49-3). In requesting the stay, the Certificate Insurers rely on the Policies' mandatory arbitration provisions, which they assert give them a right to arbitration as third-party beneficiaries. Those provisions read, in relevant part, as follows:

> Unless prohibited by applicable law, or otherwise mutually agreed by the Company and Insured, all controversies, disputes or other assertions of liability or rights arising out of or relating to this Policy, including the breach, interpretation or construction thereof, shall be settled by arbitration. Notwithstanding the foregoing,

---

[3] The arguments put forth by the Certificate Insurers, as well as by Plaintiff in its responses to those arguments, are essentially the same with respect to each Certificate Insurer's Motion to Dismiss. As a result, this Court will refer only to the filings related to Ambac's Motion rather than to each of the Certificate Insurer's Motion.

the Company or the Insured both retain the right to seek a declaratory judgment
from a court of competent jurisdiction on matter of interpretation of this Policy.

(Doc. 1, Exs. A, B, C, § 7.4).  The clause in the Policies naming the Certificate Insurers as third-

party beneficiaries reads in relevant part,

The Certificate Insurer shall be a third party beneficiary of this Policy and shall be
entitled to rely upon and directly enforce the provisions of this Policy against the
Company, provided, however, that to the extent that any enforcement of the
provisions of this Policy is being sought by the Insured, such enforcement shall
control.

(Doc. 1, Exs. A, B, C, § 7.8).

B.     **Procedural History**

Plaintiff filed its Complaint for declaratory relief in this Court on June 26, 2008.  (Doc.

1).  The following day, IndyMac filed a separate declaratory judgment action in California state

court, IndyMac Bank, F.S.B. v. Radian Ins., No. BC393388 (Los Angeles Super. Ct.).  (Pl.'s

Response to Ambac's Motion to Dismiss, Doc. 66 at 4 and Ex. A).  Deutsche Bank was added as

a party to that case, and the case was later removed to federal district court in that state (C.D.

Cal., 08-cv-4775).  (Id. at 4-5).  On July 11, 2008, the FDIC was appointed Receiver for IndyMac

Bank, MBS and Conservator for IndyMac Federal Bank, F.S.B.  (Id. at 5).  On August 29, 2008,

this Court granted the FDIC's Motion to Intervene and Stay (Doc. 5) for a statutorily mandated

90-day period.  (Doc. 15).  On January 19, 2009, the parties to the California litigation stipulated

to dismissal, with the FDIC and Deutsche Bank agreeing to bring any claims against Radian as

counterclaims in the instant litigation.  (Pl.'s Response to Ambac's Motion to Dismiss, Doc. 66

at 5 and Ex. B).

Once the stay period granted in this litigation expired, the Defendants filed various

motions in response to the Complaint.  Specifically, Deutsche Bank moved to dismiss for failure

to state a claim, (Doc. 35), while the FDIC filed a Motion to Dismiss on grounds of subject

matter jurisdiction, or in the alternative, a Motion to Strike Immaterial or Impertinent portions of

the Complaint, (Doc. 47).  The Certificate Insurers all filed Motions to Dismiss, or in the

Alternative, to Stay the Litigation Pending Arbitration.  (Docs. 31, 38, 49).  After the Certificate

Insurers filed their Motions, Deutsche Bank filed a response, explicitly assenting to a stay of the

litigation.  (Doc. 71).  As a result, Plaintiff filed a Motion to Stay, requesting this Court stay the

pending arbitrations instead of the litigation so the Court could address the rescission claim.

(Doc. 89).

　　　The Court held Oral Argument on all open motions on June 15, 2009.  (Doc. 96).  The

Court then received additional briefing on the issue of arbitration from Plaintiff.  (Pl's Letter

Brief, June 19, 2009).  Because staying the litigation pending arbitration will moot, at least

temporarily, the Motions to Dismiss, the Court will first turn to the issues regarding arbitration.[4]

---

[4]After the oral argument, the Court gave Plaintiff leave to file an Amended Complaint,
particularly with respect to jurisdiction over the FDIC.  Plaintiff filed its Amended Complaint,
(Doc. 103), as well as a supplemental brief on those jurisdictional issues, (Doc. 101), on June 23,
2009.  The FDIC filed a Motion to Dismiss the Amended Complaint on July 8, 2009.  (Doc.
105).  The Court will address Plaintiff's Amended Complaint and the FDIC's Motion to Dismiss
in a separate, forthcoming memorandum, once all briefing on that Motion is completed.

　　　Because the Certificate Insurers' Motions to Stay Pending Arbitration are not
ultimately affected by the Amended Complaint, this Court will decide these Motions despite the
new Complaint.  The Certificate Insurers have informed the court by letter, dated July 8, 2009,
that they do not plan on responding to the Amended Complaint until this Court rules on their
pending Motions to Dismiss or Stay, as their arguments have not changed in light of the
Amended Complaint.

II.     **Parties Arguments**

    A.     **The Certificate Insurers' Motions to Stay Pending Arbitration**

The Certificate Insurers request that this Court stay the litigation, pending arbitration. The Certificate Insurers' arbitration demands assert that Plaintiff improperly withheld coverage for certain defaulting loans, which the Certificate Insurers suggest is squarely within the scope of the mandatory arbitration provisions.  The Certificate Insurers argue that the eligibility of these loans for coverage is a threshold issue to Plaintiff's rescission claim, as Plaintiff's argument assumes it was entitled to withhold overage on the "extraordinarily high" number of allegedly ineligible, defaulting loans.  According to the Certificate Insurers, the appropriate forum for deciding both the eligibility of the loans for coverage and the ultimate rescission issue is thus arbitration, in accordance with the Policies' arbitration clauses.

The Certificate Insurers also assert that the mandatory arbitration provisions in the Policies allow for the third-party beneficiaries to enforce the Policies through arbitration and that there is a strong presumption in favor of arbitration, expounded in the Federal Arbitration Act. These Defendants further explain that none of the exceptions in the mandatory arbitration provisions apply here, as none of the parties have mutually agreed to litigate rather than arbitrate and the issue of coverage for defaulted loans is not a matter of interpretation falling within the declaratory judgment exception.

    B.     **Radian's Response**

Plaintiff responds that the mandatory arbitration provisions are inapplicable or unenforceable in the instant situation for several reasons.  First, Plaintiff argues that the need for arbitration to determine the coverage eligibility of individual loans will be moot if this Court

decides to rescind all of the Policies in their entirety.  Thus, Plaintiff argues that this Court should decide the rescission claim first.  Plaintiff also suggests that the Federal Arbitration Act's presumption in favor of arbitration does not necessarily apply here because of the numerous exceptions contained in the arbitration provisions at issue.

Furthermore, Plaintiff asserts that its declaratory judgment action fits within either the "mutual agreement" exception to the arbitration provisions or the exception for declaratory judgment on matters of interpretation, thus allowing this Court to hear the case despite the arbitration provisions.  As to mutual agreement, Plaintiff argues that Deutsche Bank agreed to litigate these issues by through the stipulation in the California litigation, which contemplated that Deutsche Bank would file its claims as counterclaims in this case.  Plaintiff suggests that agreement precludes the Certificate Insurers from pursuing their claims in arbitration because, as third-party beneficiaries, they can only enforce the contract to the extent that Deutsche Bank is not doing so under § 7.8 of the Policies.  Furthermore, Plaintiff argues that the rescission claim necessarily involves contract interpretation.

### III.  Legal Standards

#### A.  Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  This Court has authority to decide declaratory judgment actions under 28 U.S.C. § 2201 et seq.

#### B.  Standard of Review: Motion to Stay Pending Arbitration

"When an action involves 'an arbitration agreement connected to a transaction involving

interstate commerce,' the courts must look at 'the Federal Arbitration Act, 9 U.S.C. § 1 et seq.,

and the case law that has evolved thereunder.'" Leslie-Hughes v. Am. Express Fin. Advisors, Inc.,

2004 WL 1465669, at *1 (E.D. Pa. June 29, 2004) (Robreno, J.) (quoting PaineWebber, Inc. v.

Hartmann, 921 F.2d 507, 510 (3d Cir.1990) (overruled by implication on other grounds by

Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002))).

       Under the Federal Arbitration Act ("FAA"),

> If any suit or proceeding be brought in any of the courts of the United States upon any
> issue referable to arbitration under an agreement in writing for such arbitration, the court
> in which such suit is pending, upon being satisfied that the issue involved in such suit or
> proceeding is referable to arbitration under such an agreement, shall on application of one
> of the parties stay the trial of the action until such arbitration has been had in accordance
> with the terms of the agreement, providing the applicant for the stay is not in default in
> proceeding with such arbitration.

9 U.S.C. § 3. Accordingly, if there is a valid agreement to arbitrate, there is a general

presumption in favor of arbitration. See AT&T Techs., Inc. v. Commc'n Workers of Am., 475

U.S. 643, 650 (1986).

       "A motion to stay a suit in favor of arbitration is treated as a motion for summary

judgment because the Court must decide the question of whether the parties have agreed to

submit the dispute to arbitration." Sarl v. A.M. Todd Co., 2008 WL 724607, at *2 (E.D. Pa.

March 18, 2008) (McLaughlin, J.) (citing Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,

636 F.2d 51, 54 and n.9 (3d Cir.1980)); see also Technetronics, Inc. v. Leybold-Geaeus GMBH,

1993 WL 197028, at *2 (E.D. Pa. June 9, 1993) (Hutton, J.) ("Although styled as a motion to

dismiss, in a motion to stay proceedings and/or compel arbitration, the appropriate standard of

review for the district court is the same standard used in resolving summary judgment motions

pursuant to Fed. R. Civ. P. 56(c).").  When one party seeks to force another to arbitrate, a district

court should give the party opposing arbitration "the benefit of all reasonable doubts and

inferences that may arise."  Par-Knit Mills, 636 F.2d at 54 (3d Cir.1980).

IV.    **Analysis**

    A.    **The arbitration provisions are generally enforceable despite the claim for rescission.**

    As none of the parties dispute the facts described above, the primary question before this

Court is whether the parties have agreed to submit their claims to arbitration under the specific

arbitration clauses included in their Policies.  The parties disagree as to whether the arbitration

clauses at issue are applicable or enforceable in the instant situation.  Plaintiff first argues that

because it is seeking a declaration that "given the Insured's failure to substantially comply with

the Policies' terms and conditions, the arbitration clause is unenforceable."  (Pl's Letter. Brief,

June 22, 2009, at 2).

    In deciding whether to stay this litigation or the arbitration, this Court must consider the

policy set forth in the FAA, which strongly favors arbitration.  See Great W. Mortgage Corp. v.

Peacock, 110 F.3d 222, 228 (3d Cir. 1997) (noting the strong presumption in favor of litigation

and that any "'doubts concerning the scope of the arbitrable issues should be resolved in favor of

arbitration.'" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25

(1983))).  The Supreme Court has specifically held that this presumption applies even when a

party is requesting rescission of the entire contract, including the arbitration provision, on

grounds such as fraud in the inducement.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,

388 U.S. 395, 402-404 (1969) (holding that where an arbitration clause precludes litigation, the

doctrine of severability allows a court to consider the validity of an agreement to arbitrate but

does not permit it to address questions concerning the validity of the contract generally); <u>Buckeye Check Cashing, Inc. v. Cardegna</u>, 546 U.S. 440 (2006) (reaffirming <u>Prima Paint Corp.</u>).

The Third Circuit has expanded this holding, explaining that a court may consider claims relating to the validity of the arbitration clause itself or claims that a contract is void <u>ab initio</u>, before requiring the parties to submit to arbitration. <u>Sandvik AB, v. Advent Int'l Corp.</u>, 220 F.3d 99, 106-07 (3d Cir. 2000). However, the Third Circuit explained that a court should abstain on questions of whether the contract was voidable and therefore rescindable, which must be decided through arbitration. <u>Id.</u>; <u>see also</u> <u>Fox Int'l Relations v. Fisery Sec., Inc.</u>, 418 F. Supp. 2d 718, 723-24 and n.7 (E.D. Pa. 2006) (applying <u>Prima Paint</u> and <u>Sandvik</u> to conclude that under Third Circuit law, courts can address rescission claims involving questions of signatory power, i.e. challenges to "whether an agreement between the alleged obligor and obligee was even concluded" (citations omitted)).

Clearly, the FAA, as interpreted in the above-cited cases, indicates a strong preference for arbitration, even when a party asserts that the contract as a whole should be rescinded, as is the case here. Notably, none of the parties assert that the arbitration clause itself is in any way invalid; the rescission claim relates to the entire contract and is based on the alleged breach of warranties and misrepresentations made about the mortgagees.[5] As such, Plaintiff's argument

---

[5]In the Complaint, (¶ 60, 75), Plaintiff alleges that the Policies are "void <u>ab initio</u>," which under <u>Prima Paint</u> and <u>Sandvik</u>, would allow this Court to address the rescission claim before compelling arbitration, despite the mandatory arbitration provision. However, the facts pleaded in the Complaint, as well as Plaintiff's argument in the supporting memoranda, make clear that Plaintiff is not actually asserting that the contracts are void <u>ab initio</u>. Rather, Plaintiff asserts that the Policies are voidable, or rescindable, due to fraud, mistake, or breach of contract. A contract is generally considered void <u>ab initio</u>, rather than voidable, if some fraud occurred in the actual execution of the contract. <u>Sandvik</u>, 220 F.3d at 105-109; <u>see also</u> <u>Fox Int'l Relations</u>, 418 F. Supp. 2d at 723 (explaining differences between challenges to the validity an entire contract and

that deciding the rescission claim first will moot the need to arbitrate must be rejected as a matter of law, as Courts have clearly determined that such claims are subject to the arbitration provision.

Still, Plaintiff asserts that this situation is different from that in <u>Prima Paint</u>, <u>Sandvik</u>, or <u>Fox</u> because those cases did not concern arbitration clauses with the type of exceptions and limitations contained in the arbitration clauses here.  (Hr'g Tr. Pgs. 11-12).  Thus, Plaintiff argues the presumption in favor of arbitration is not as strong here, and the Court should therefore stay the arbitrations.  In particular, Plaintiff points to the Policies' allowance for litigation rather than arbitration when the parties mutually agree not to arbitrate or when a party files a declaratory judgment action on a "matter of interpretation."  Furthermore, although the third-parties can generally enforce all of the provisions in the contract, including the mandatory arbitration clause, Plaintiff notes that § 7.8 precludes such enforcement if the Insured is attempting to enforce the provision at issue.

As a general matter, parties to a contract are entitled to carve out limitations to an arbitration provision, and such exceptions do not render the provision, as limited, unenforceable. <u>State Farm Mutual Auto. Ins. Co. v. Hughes</u>, 2005 WL 3591928, at *4 (E.D. Pa. Dec. 30, 2005) (Strawbridge, Mag. J.) (concluding that where the terms of an arbitration agreement are expressly limited, that limitation will be enforced as written (citing <u>State Farm Mutual Auto. Ins. Co. v.</u>

---

challenges to whether the agreement was ever concluded).

Here, Plaintiff has not alleged facts supporting the assertion that fraud occurred during the execution of the Policies.  The entire gist of Plaintiff's argument is that it has discovered the falsity of certain facts that were warranted and/or represented to it, and upon which it relied in entering into the contracts.  Plaintiff therefore argues it should be able to rescind the contracts. Plaintiff has never question the execution of the contracts or the signatory power of any of the parties.  Despite Plaintiff's attempt to suggest that the Policies were void <u>ab initio</u>, the Plaintiff's claim clearly alleges that the contracts have become voidable and thus is directly covered by the FAA presumption.

Coviello, 233 F.3d 710, 719 (3d Cir. 2000))); Borgia v. Prudential Ins. Co., 750 A.2d 843, 852

(Pa. 2000) (holding parties were free to draft a limited arbitration provision).  Plaintiff has not

provided any case holding that the mere inclusion of such limitations in an arbitration provision

renders the general policy favoring arbitration inapplicable to an otherwise enforceable

agreement.  Thus, unless one of the specific exceptions to the mandatory arbitration provision

applies, this Court will enforce the mandatory arbitration provision and stay the litigation, as

requested by the Certificate Insurers.[6]

> **B.**      **The "mutual agreement" exception does not apply.**

With regards to the mutual agreement exception, Plaintiff asserts that it and Deutsche

Bank agreed not to arbitrate when they both signed the stipulation to dismiss the California suit.

Plaintiff argues that in the stipulation, Deutsche Bank agreed to bring its claims as counterclaims

in the instant litigation, rather than as the separate suit in California.  As such, Plaintiff argues

that Deutsche Bank has articulated its choice on how to enforce the Policies, which must be

respected by the third parties under § 7.8 of the Policies.  Plaintiff suggests the third-party

beneficiaries cannot overturn the decision to litigate or usurp Deutsche Bank's role in enforcing

the Policies since Deutsche Bank has begun that enforcement by participating in the California

litigation and agreeing to the stipulation.  Plaintiff's position lacks merit for several reasons.

---

[6]This Court notes that a non-signatory of a contract that is also a named third-beneficiary can generally enforce a mandatory arbitration provision in the contract.  See Bouriez v. Carnegie Mellon Univ., 359 F.3d 292, 296 (3d Cir. 2004) ("Generally, the common law theories used to bind a non-signatory to an arbitration clause include third party beneficiary, agency and equitable estoppel.").  In Stone v. Pennsylvania Merchant Group, Ltd., this Court specifically found that a third-party beneficiary could enforce an arbitration agreement against one of the signatories of the agreement.  949 F. Supp. 316, 320 (E.D. Pa. 1996).  Thus, the Certificate Insurers have appropriately relied on the mandatory arbitration provisions in bringing their arbitration demands and requesting a stay for the litigation.

1.   **Deutsche Bank has not mutually agreed to litigate or waived its right to arbitration.**

First, to the extent Plaintiff argues that Deutsche Bank's conduct in the California litigation served as an implicit, binding mutual agreement to litigate rather than arbitrate, this Court disagrees that such an agreement exists.  Absent a clear waiver of the right to arbitrate, this Court will not stretch the facts to infer from Deutsche Bank's actions that it intended to give up that right and agree to litigate rather than submit to arbitration.

"A determination as to whether there has been a waiver of the right to arbitration 'is not to be lightly inferred.'"  G. & V. Gen. Contractors, Inc. v. Goode, 1987 WL 9786, at *5 (E.D. Pa. April 21, 1987) (VanArtsdalen, J.) (quoting Gavlik Constr. Co. v. H.F. Campbell Co., 526 F.2d 777, 783 (3d Cir. 1975)).  According to the Third Circuit, a "party waives the right to compel arbitration only in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown."  Great W. Mortgage Corp., 110 F.3d at 233; see also Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 222-24 (3d Cir. 2007) (finding waiver where party requesting arbitration did so four years after the litigation was commenced and after the parties had engaged in extensive discovery and motion practice).  Simply initiating a suit in court is not alone sufficient to find waiver.  Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 232-33 (3d Cir. 2008) (explaining that although litigation conduct is relevant to the waiver analysis, the court should look "beyond the mere initiation of litigation to consider the extent to which the party seeking to compel arbitration took unfair advantage of the litigation process ").

Given these principles, this Court cannot conclude that Deutsche Bank's stipulation in the

California litigation irrevocably waived its right to arbitrate.  First, Deutsche Bank did not initiate

that suit—IndyMac did so, allegedly on behalf of Deutsche Bank, though it is unclear what role

Deutsche Bank played in pursuing that litigation.  Second, that litigation did not progress through

discovery, as the parties stipulated to dismissal.  Even more, despite that stipulation, Deutsche

Bank has not filed any counterclaims in the instant litigation that indicate its intent to invoke the

stipulation and seek enforcement of the Policies through the litigation here.  The stipulation itself

did not explicitly waive Deutsche Bank's arbitration rights, and this Court will not infer waiver

simply because Deutsche Bank agreed to bring any future enforcement claims in the instant suit.

As a court will not find waiver even where a party actually initiates litigation, see Zimmer, 523

F.3d at 233, this Court cannot conclude that a mere agreement to bring future claims in a

particular venue is sufficient to waive arbitration rights.

Furthermore, this Court finds that Deutsche Bank's conduct in the current litigation has

not amounted to a clear election to litigate rather than arbitrate.  While Deutsche Bank has not

objected to the litigation on grounds that arbitration should be pursued instead, it has filed a

motion to dismiss the suit for failure to state a claim.  However, Deutsche Bank then explicitly

assented to arbitration and a stay of the litigation once the third-parties filed their Motions.  (Doc.

71).  Deutsche Bank essentially admitted that it was not actively enforcing the Policies and was

instead allowing the third-party beneficiaries, the only injured parties at the moment, to take the

lead.  (Hr'g Tr. Pgs. 58-60).

This Court will not find waiver solely on Deutsche Bank's litigation conduct in this case

when its only response has been to move for dismissal for failure to state a claim and then to

assent to a stay pending arbitration.  See Peltz ex rel. Estate of Peltz v. Sears, Roebuck & Co.,

367 F. Supp. 2d 711, (E.D. Pa. 2005) (holding that the fact that the party now seeking arbitration "did not raise the issue of arbitration in its motions to dismiss is not controlling" to the question of waiver).  Notably, the instant litigation has not even progressed to the discovery stage; the parties have not engaged in any substantial discovery exchanges or motion practice beyond the motions to dismiss.  At this stage, none of the parties would be prejudiced by staying the litigation pending arbitration.

Therefore, this Court cannot find that Deutsche Bank's conduct in either the prior California litigation or the current litigation waived its rights to arbitration or reflected an agreement, either explicitly or implicitly, to litigate the claims.  To the extent that Plaintiff's argument for staying the arbitration assumes Deutsche Bank mutually agreed to litigation and waived its rights to arbitration—an election Plaintiff asserts the Certificate Insurers must adhere to—this Court rejects Plaintiff's position because no such agreement exists.

> **2.** **Under the Policies, Deutsche Bank's conduct does not preclude the Certificate Insurers from invoking the mandatory arbitration provision.**

Plaintiff's argument under the mutual agreement exception also fails because it assumes that Deutsche Bank's conduct prevents the Certificate Insurers from invoking their rights to enforce the Policies through arbitration.  Plaintiff relies on § 7.8, which prevents the Certificate Insurers from enforcing any particular provision when Deutsche Bank has already taken action to do so.  Even if Deutsche Bank had chosen to enforce the contracts through litigation and had waived its right to arbitration, that election and/or waiver does not necessarily apply to the third-party beneficiaries, which are still entitled to invoke the mandatory arbitration provision.  The plain language of § 7.8 does not bar the Certificate Insurers from invoking their arbitration rights

-16-

merely because Deutsche Bank has waived its rights; it only prevents them from enforcing the

Policies if Deutsche Bank has elected to do so.  Plaintiff has not cited any case law standing for

the proposition that the signatory's waiver of a right to arbitrate also waives the same right for

third-party beneficiaries entitled to enforce all provisions of the contract.  This Court cannot find

that Deutsche Bank's conduct in the California litigation waived or somehow overrode the

arbitration rights of the third parties, who were not even parties in that previous litigation.[7]

As neither Deutsche Bank nor the Certificate Insurers waived their rights to arbitration,

§ 7.8 only precludes the Certificate Insurers from enforcing the Policies, though either litigation

or arbitration, if Deutsche Bank is actually pursuing enforcement of the Policies by any means.

Plaintiff argues that because the California stipulation specifically allows Plaintiff to bring

counterclaims in this district, Plaintiff has indicated its intent to enforce the Policies and

effectively invoked the § 7.8 bar.  However, just as Deutsche Bank's limited actions in both the

California litigation and the instant litigation do not reflect its intent to litigate rather than

arbitrate, the same conduct does not reflect its intent to actively pursue enforcement of the

Policies.  In its brief to this Court, Deutsche Bank "supports and adopts" the arguments of the

Certificate Insurers that this case should be dismissed or, in the alternative, stayed pending

arbitration.  Moreover, Deutsche Bank specifically stated at the hearing held on June 15, 2009

that it was not actively pursuing enforcement of the Policy because the beneficiaries of the

---

[7]None of the parties have suggested that the Certificate Insurers waived their rights to arbitration, as they have moved to stay the proceedings pending arbitration at a sufficiently early stage, shortly after the case was removed from suspense and prior to any discovery.  Gavlik Constr. Co., 526 F.2d at 783-84 (holding that a party did not waive its right to arbitration where there was no prejudice to the opposing party and motion to stay was filed immediately after the suit was brought to federal court).

Trusts, to which Deutsche Bank served as Trustee, were not currently harmed by Radian's failure

to cover certain defaulted mortgages, as the Certificate Insurers were covering the losses.  (Hr'g

Tr. Pgs. 58-60).  Accordingly, Deutsche Bank was willing to let the only parties suffering an

injury at the moment, the third-party beneficiaries, pursue enforcement through the means they

thought were most appropriate.  (Hr'g Tr. Pg. 60).

　　　　Where Deutsche Bank has so explicitly admitted that it is not pursuing enforcement at

this time, this Court cannot contemplate how § 7.8 would bar an action by the third-party

beneficiaries.  The Certificate Insurers persuasively point out that § 7.8 applies to situations when

the Insured has already taken some action, not to situations when the Insured "may" enforce the

provisions.  (Ambac's Reply, Doc. 73 at 12; Monoline Opposition, Doc. 95 at 2).  Thus, although

Deutsche Bank could pursue enforcement through counterclaims in the instant litigation, as

contemplated by the stipulation, Deutsche Bank has not done so yet.  Considering the strong

presumption in favor of arbitration, this Court will not base its decision to stay arbitration on

what a party might do in the future.[8]

　　　　As such, this Court finds that § 7.8 and Deutsche Bank's conduct in both litigations do

not preclude the Certificate Insurers from enforcing the Policies through arbitration.  Deutsche

Bank's actions did not waive the third-parties' arbitration rights, nor has Deutsche Bank actively

---

　　　　[8]This Court notes that Deutsche Bank also stated it might pursue an enforcement action in
the future against Plaintiff should the beneficiaries of the Trusts be subjected to any injury.
Deutsche Bank did not indicate whether it would prefer litigating or arbitrating those claims.
Again, this Court will not base its decision on a hypothetical action Deutsche Bank may or may
not take in the future.  Should Deutsche Bank decided to enforce the policies in the future
through arbitration or litigation, thus raising complications with the third-party enforcement
actions under § 7.8 or with the mandatory arbitration provisions, this Court can address those
problems as they arise.

pursued enforcement so as to preclude the third-parties from doing so.  Thus, the "mutual

agreement" exception does not apply, and the Certificate Insurers are entitled to assert their

claims through arbitration unless another exception to the mandatory arbitration provisions

applies.

C.     **Plaintiff's entire claim for rescission does not fall within the exception for declaratory judgment actions on "Matters of Interpretation."**

Plaintiff argues in the alternative that the instant litigation falls within the provisions'

exception to mandatory arbitration for declaratory judgment actions brought on "matters of

interpretation."  Plaintiff asserts that to determine the rescission claim, this Court must engage in

contract interpretation when it assesses whether and how Deutsche Bank's actions breached the

contract.  According to Plaintiff, the breach of contract analysis requires this Court to interpret

the Policies to determine what actions would constitute breach.  For example, Plaintiff argues

that this Court must determine whether Deutsche Bank warrantied or represented certain facts

about the mortgagees in § 2.3 of the Policies, as that determination affects the applicable standard

for rescission.  Similarly, Plaintiff suggested that the Court must interpret whether the parties'

right to cancel under § 2.1 of the contract applies only to the circumstances described in § 2.2,

precluding any such right for problems arising from the warranties in § 2.3.  (Hr'g Tr. Pg. 52-53).

For several reasons, the Court rejects Plaintiff's ultimate position that this Court must

stay the arbitration and hear the rescission claim under the exception in the Policies' mandatory

arbitration provisions for declaratory judgments on matters of interpretation.

1.     **Interpretation is not necessarily required to determine a claim for rescission.**

The Court agrees with Plaintiff that rescission claims may be brought in declaratory

-19-

judgment actions.  See, e.g., State Farm Mut. Auto Ins. Co. v. Armstrong, 949 F.2d 99 (3d Cir.

1991).  However, as a general matter, contract interpretation is not a necessary predicate to

determining whether a plaintiff is entitled to rescission, even if a court will sometimes address

interpretation issues prior to engaging in the rescission analysis itself.  For a court to rescind a

contract under Pennsylvania law,[9] an insurer must generally show by clear and convincing

evidence that "(1) the insured made a false representation; (2) the insured knew the

representation was false when it was made or the insurer made the representation in bad faith;

and (3) the representation was material to the risk being insured."  Northwestern Mut. Life Ins.

Co. v. Babayan, 430 F.3d 121, 129 (3d Cir. 2005).  To obtain relief, the plaintiff need only show

these elements, which often involve pre-contractual factual determinations rather than contract

interpretation.

　　　　Plaintiff argues its claim for rescission is primarily grounded in breach of warranty, rather

than fraud, which according to Plaintiff changes the test for rescission under Pennsylvania law.

In Allstate Insurance Company v. Stinger, the Pennsylvania Supreme Court held that to obtain

rescission, an Insurer does not need to prove the Insured's knowledge of the falsity of its

statements when those statements are warranted, as opposed to merely represented.  163 A.2d 74,

76 (Pa. 1960) (holding that where statements by the insured are warranted to be true, "the insurer

may avoid the policy by showing the falsity of statements material to the risk, irrespective of the

insured's knowledge of their falsity or of his good faith in making them").  This Court has not

found any case applying or disputing that standard since it was expounded nearly fifty years ago.

---

[9] The Policies contain choice of law clauses selecting Pennsylvania law and none of the parties dispute that Pennsylvania law should apply.

For purposes of this motion, the Court will assume that the <u>Stinger</u> standard applies and knowledge of falsity is not required.  Similarly, Plaintiff asserts that it has also alleged a claim for rescission based on negligent misrepresentation, which does not require evidence of actual knowledge.  (Pl's Response to FDIC's Motion to Dismiss, Doc. 60 at 15-16).[10]

Regardless of whether knowledge is required in cases of warranty, materiality, a largely factual issue, is certainly a necessary component of Plaintiff's rescission claim.  <u>Fallowfield Dev. Corp. v. Strunk</u>, 1991 WL 17793, at *11 (E.D. Pa. Feb. 11, 1991) (Hutton, J.) ("In order to receive the rescission as a remedy for breach of an express warranty, as is claimed here, the plaintiff must establish that the misrepresentation was the basis of the bargain.").  Information provided to obtain insurance, such as the information regarding the underlying mortgages here, is "material if knowledge or ignorance of it would influence the decision of the issuing insurer to issue the policy, or the ability of the insurer to evaluate the degree and character of risk, or the determination of the premium rate.'"  <u>Am. Home Assurance Co. v. The Church of Bible Understanding</u>, 2006 WL 2583594, at *4 (E.D. Pa. Sept. 6, 2006) (Kaufman, J.) (quoting <u>Am. Franklin Life Ins. Co. v. Galati</u>, 776 F. Supp. 1054, 1060 (E.D. Pa. 1991).

Given the components of a rescission claim, which Plaintiff must prove by clear and convincing evidence to obtain relief, Plaintiff's declaratory judgment action is not, at its core, a question of contract interpretation.  This Court need not interpret the contract to decide if fraudulent or false statements were made about the underlying loans or mortgagees, if Deutsche Bank breached the warranty, or even if Deutsche Bank had knowledge of the falsity of its

---

[10]Plaintiff's Amended Complaint alleges negligence and negligent misrepresentation as distinct causes of action justifying relief in two new counts.  (Doc. 103).

statements.  Similarly, whether those statements were material—if the allegedly false information influenced Plaintiff's decision to insure the underlying loans or the premiums it demanded—is not a question of contract interpretation but an assessment of the parties' motives and respective positions when agreeing to the terms of the Policies.  These issues are squarely questions of fact, requiring evaluation of factual evidence and suitable for resolution in arbitration, as agreed to in the Policies.  Notably, Plaintiff's right to rescind here is specifically predicated on the alleged ineligibility for coverage of a large amount of the loans—the same issue involved in the Certificate Insurers' arbitration demands.  A determination of those loans' eligibility, based on their conformity with the representations and warranties in the Policies, requires an in-depth assessment of the loans and the mortgagees who acquired them.  Once again, these are factual issues that are exactly the type of dispute the parties agreed to submit to arbitration.

Though rescission does not necessarily require contract interpretation and is largely a factual inquiry, interpretation issues relevant to or a prerequisite of the rescission claim may arise in limited circumstances.  For example, in Protective Life Insurance Company v. Van Sant, the court construed language in an insurance contract regarding a condition precedent and then determined, as a matter of fact, that the parties had not complied with the condition, warranting rescission.  1992 WL 281117, at *3 (D.N.J. Sept. 21, 1992).  In their supplemental brief to this Court, Plaintiff cites several other cases that it asserts demonstrate contract interpretation is often necessary to determine rescission.  See MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 210-214 (3d Cir. 2005) (interpreting contract to determine if party had waived the defense of fraud, and therefore rescission based on fraud, in the contract); Seneca Ins. Co., Inc. v. Lexington and Concord Search and Abstract, LLC, 484 F. Supp. 2d 374, 376-77 (E.D. Pa. 2007) (constructing

Policies to determine if third party had a right to intervene in a rescission action in light of a no-assignment clause).

While those cases do involve contract interpretation, the interpretation was only necessary to determine a threshold issue before reaching the rescission claim, not to decide the actual claim for rescission. These decisions do not provide strong support for the proposition that contract interpretation is a necessary and integral part of the three-prong rescission analysis itself. Rather, these cases stand for the unremarkable proposition that where a contract is the subject of litigation, various parts of the contract may require interpretation prior to reaching the question of rescission. However, the ultimate decision to rescind is not directly dependent on any contract interpretation. The declaratory judgment exception therefore does not apply simply because Plaintiff has brought a rescission claim.

Finally, the Court rejects Plaintiff's more specific argument that the declaratory judgment exception applies here because the Court needs to construe the right to cancel provision in § 2.1. The law of rescission operates outside of the contract; whether or not the parties are given an explicit right to cancel under the contract for certain reasons does not in any way affect or restrict their common law right to rescind. The Policies contain specific language, in § 7.6,  preserving those extra-contractual rights: "No right or remedy of the Company provided for by this Policy shall be exclusive of, or limit, any other rights or remedies set forth in this Policy or otherwise available to the Company at law or equity." Thus, contrary to Plaintiff's assertion, this Court does not necessarily need to construe the right to cancel under §§ 2.1, 2.2, and 2.3 to determine if Plaintiff has a common law right to rescind, and thus those sections do not implicate the declaratory judgment exception to arbitration.

-23-

**2.** **Resolution of the Issues Here**: **The Court will stay the litigation but retain jurisdiction.**

The Policies at issue here contain unique, limited arbitration clauses, which clearly provide that all claims, including those for rescission, should be decided by arbitration unless an exception applies.  This Court has already determined that the mutual agreement exception does not apply and that the matter of interpretation exception cannot be invoked to obtain jurisdiction in this Court over the rescission claim itself.  However, as noted above, a rescission claim may occasionally involve collateral issues of contract interpretation, which this Court can address through this declaratory judgment action.  As a result of these specific limitations, the arbitration provisions present an unusual logistical situation when the Certificate Insurers demand arbitration but Plaintiff seeks to use the declaratory judgment exception to have this Court interpret the contract at issue in arbitration.  Both the court and an arbitration panel have authority to address different but related issues.

This Court is thus tasked with determining the most judicious, fair and efficient way of adjudicating these issues while honoring the intent of the parties in the contracts.  The parties chose to include these limited mandatory arbitration provisions in their contracts.  Without strong policy reasons suggesting otherwise, this Court will respect the parties' bargain and agreement to arbitrate, including their choice to carve out very specific exceptions allowing the parties to avoid arbitration.  See Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 410 (3d Cir. 2004) (noting the federal policy favoring enforcement of arbitration agreements and explaining that "the central purpose of the FAA is to give effect to private agreements").  The Court will therefore stay the litigation pending arbitration, where Plaintiff shall bring its rescission claim in

compliance with the mandatory arbitration provision.  The most appropriate procedure, given the unique contract, is to allow the arbitration to proceed first.  The parties shall select an arbitration panel in accordance with the Policies.  In determining the Plaintiff's rescission claim, and any other claims, the arbitrators shall decide how to proceed.  The panel may first adjudicate the eligibility of the underlying loans for coverage, which is both the crux of the Certificate Insurers' claims and a threshold factual issue.

However, while staying the litigation, this Court will also retain jurisdiction to hear any questions of interpretation that arise in the arbitration and are relevant to the rescission claim. This Court can then address any questions of interpretation relevant to rescission that are brought to light through the arbitration, whether those questions concern the nature of the warranties or representations in § 2.3, the right to rescind based on conduct by the lender under § 4.15, or any other provision in any of the contracts.  Since Plaintiff, as well as Deutsche Bank and the Certificate Insurers, are entitled to bring a declaratory judgment action in this Court to adjudicate interpretative issues, the parties may file motions seeking interpretation or clarification in the present declaratory judgment action.  Similarly, the arbitration panel may pose its own questions of interpretation on certain provisions.  This Court will require the parties to submit a report, which shall include any motions for interpretation, within ninety days.  Of course, any of the parties may also file additional motions  after the arbitration is finished if they believe this Court still needs to interpret a part of the contract.

The Court recognizes that this solution—staying the litigation pending arbitration while retaining jurisdiction to hear questions of interpretation—is somewhat novel, but the contract itself is uniquely drafted and requires a unique approach.  In <u>Alco Standard Corporation v.</u>

Benalal, 345 F. Supp. 14, 21-22 (E.D. Pa. 1972), the court examined an arbitration provision that specifically limited the remedies available in arbitration to damages but did not otherwise prohibit litigation to obtain generally available equitable relief.  The court explained that the powers of the arbitration panel "are limited to act only on those issues and to fashion only those remedies which the agreement itself permits."  Id. at 22.  Because the plaintiff in Alco sought rescission, the court explained that it must retain jurisdiction to hear the rescission claim while at the same permitting the arbitration to proceed over the damages claim.  Id. at 22-23.  Noting that under this procedure, two panels would therefore address the same issues, the Court explained that, "[a]lthough this seems wasteful of time and resources, if the parties intentionally put themselves in such a position, we have no alternative but to order them to honor their contractual obligations."  Id. at 23.

The same principles must guide the outcome here.  This Court may only hear claims that the agreement itself permits, while the arbitration panel has authority to hear the remaining claims.  Referring the case first to arbitration, where specific questions of interpretation relevant to rescission may be brought to light, and then addressing those questions once they are raised in this Court is the only way to comport with the terms of the agreement and the law.  The procedure admittedly extends the judicial process and may not be optimally efficient, but the parties created this situation by drafting and agreeing to the unique contractual provisions.  This result most accurately reflects the parties' intent to allow only questions of interpretation to be decided by this Court.

The Third Circuit recently explained that "the FAA has a policy in favor of [piecemeal litigation], at least to the extent necessary to preserve arbitration rights."  Nationwide Mut. Fire

Ins. Co. v. George V. Hamilton, Inc., — F.3d —, 2009 WL 1911592, at *5 (3d Cir. July 6, 2009)

(holding Colorado River abstention doctrine did not require the federal district court to dismiss a

motion to compel arbitration pursuant to an arbitration agreement, even though arbitration would

result in piecemeal litigation).  Noting that the arbitration agreement did not cover all parties to

the litigation and that enforcement of the arbitration agreement would therefore result in separate

adjudications, the Third Circuit nonetheless concluded that those concerns were insufficient to

preclude enforcement because the FAA policy was "irrespective of any concomitant decline in

judicial efficiency."  Id. at *6.  While the Third Circuit's examination of the FAA in Hamilton

arose during an analysis of factors favoring abstention, the Court's explanation of the FAA's

policy applies more broadly and informs the situation here.  Thus, as indicated in Alco, despite

the concern for inefficiency, this Court is bound by the FAA and the parties' decision to enter

into an arbitration agreement.

Finally, the remedy sought here, a declaratory judgment establishing the right to rescind,

is one based in equity over which the court has substantial discretion.  Therien v. Trustees of

Univ. of Penn., 2006 WL 83448, at *3 (E.D. Pa. Jan. 10. 2006) (Schiller, J.).  Judges often

"express a greater willingness to experiment with innovative remedies when exercising

'equitable jurisdiction.'"  Robert N. Leavell, Jean C. Love, Grant S. Nelson, and Candace S.

Kovacic-Fleischer, Equitable Remedies, Restitution, and Damages: Cases and Materials 11

(Thomson West 2005).  A court sitting in equity often strongly considers external factors, such as

balance of hardships, restoration of the status quo, fairness, and practicality, when fashioning a

suitable remedy.  4 Michael D. Goldman and Brian C. Ralston, Specific Performance and

Rescission in Business and Commercial Litigation in Federal Courts § 43.3 (Robert L. Haig ed.,

Thomson West 2005).  "Equity is said to be flexible rather than rigid, its interest in justice rather than law . . . ."  1 Dan B. Dobbs, <u>Law of Remedies: Damages-Equity-Restitution</u> 63 (West 1993).

Still, while "a court of equity has broad powers" to fashion a fair and practical remedy, "'[i]t is a mistake to suppose that a court of equity is amendable to no law, either common or statute, and assumes the rule of an arbitrary legislator in every particular case.'"  <u>Barnes v. The Am. Tobacco Co., Inc.</u>, 984 F. Supp. 842, 867 (E.D. Pa. 1997).  Thus, any equitable solution this Court devises must be framed by the common law of contracts as well as the federal policy found in the FAA, both of which provide the defendants here with legal rights to arbitration.  With fairness and practicality in mind, this Court has exercised its liberal powers as a court in equity in devising the procedure set forth above.  At the same time, the procedure, though unique and perhaps not ideally efficient, provides the fairest and most practical solution possible while respecting the parties' legal rights to arbitration as set forth in the policies and the FAA.

**V.      Conclusion**

Thus, this Court will grant the Certificate Insurers' Motions to Stay the litigation pending arbitration.  The arbitration clauses are generally enforceable and none of the exceptions apply at this time.  As such, this Court denies Plaintiff's Motion to Stay the arbitration and denies, without prejudice, Deutsche Bank's Motion to Dismiss.

An appropriate Order follows.

O:\Lauren\Radian\arbitration memo.wpd