**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RADIAN INSURANCE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO.  08-2993 |
| DEUTSCHE BANK NATIONAL TRUST | : | |
| COMPANY, et al. | : | |

**MEMORANDUM RE: FDIC'S MOTION TO DISMISS**

**Baylson, J.**                                                    **October 1, 2009**

Presently before the Court is Defendant Federal Deposit Insurance Corporation's

("FDIC") Motion to Dismiss, which asserts that this Court lacks subject matter jurisdiction to

hear claims for equitable relief against the FDIC under the Financial Institutions Reform,

Recovery, and Enforcement Act of 1989 ("FIRREA").  The motion further suggests that Plaintiff,

Radian Insurance, Inc. ("Radian"), has failed to state a claim with respect to its negligence and

negligent misrepresentation claims.  This case arises from a dispute over a series of insurance

polices issued by Radian to Defendant Deutsche Bank National Trust Company ("Deutsche

Bank") to cover mortgages that were originated and serviced by Indymac, for which the FDIC

has since been appointed Receiver and Conservator.  For the reasons set forth below, this Court

finds that it lacks subject matter jurisdiction over the equitable claims and that the tort claims

requesting damages must be dismissed due to the economic loss doctrine.

**I.**      **Background Information**

In a previous Memorandum, this Court addressed several Motions to Dismiss by other

Defendants in this case.  (Doc. 107).  That Memorandum outlined, in significant detail, the

complicated facts in this case.  See Radian Ins., Inc. v. Deutsche Bank Nat'l Trust Co., — F.

Supp. 2d —, 2009 WL 2096261, at *1-3 (E.D. Pa. July 15, 2009).  As such, the Court will not

repeat those details here, but will merely summarize the facts particularly relevant to the instant

motion.

In this action, Radian seeks a declaratory judgment on its right to rescind three Insurance

Polices that it had issued to Deutsche Bank.  The Polices insured against default certain

mortgages involved in a securitization.  Id. at 1.  Those mortgages, which were originated and

serviced by Defendant Indymac, were then pooled into three separate Trusts for which Defendant

Deutsche Bank was the Trustee.  Id.  Deutsche Bank issued Certificates from the Trusts, backed

by the mortgages, and sold those Certificates to investors.  Id.  Besides the Radian insurance for

the underlying mortgages, Deutsche Bank also obtained insurance for the Certificates issued from

each Trust, which was provided by Defendants Financial Guaranty Insurance Company

("FGIC"), Ambac Assurance Corporation ("Ambac"), and MBIA Insurance Corporation

("MBIA") (collectively, the "Certificate Insurers").  Id. at 2.  In its Complaint, Radian argued that

Deutsche Bank breached warranties made in the Policies by misrepresenting certain facts about

the eligibility of the underlying mortgages for insurance coverage, thus giving Radian a right to

rescind.  Id.

Radian first filed its Complaint in this Court on June 26, 2008.  As to IndyMac, that

Complaint appeared to assert two Counts: one for rescission of the Policies (Count I) and one for

a declaration of rights (Count II).  As noted earlier, the FDIC was appointed Receiver for

IndyMac Bank, F.S.B. and as Conservator for IndyMac Federal Bank, F.S.B. on July 11, 2008.[1]

Id. at 3.  On August, 29, 2008, the Court granted the FDIC's Motion to Intervene and Stay,

allowing any parties with claims against the IndyMac entities to file administrative claims with

the FDIC, as required under FIRREA, 12 U.S.C. §§ 1821(d)(3), (d)(5), and (d)(6).  Id.

Accordingly, Radian filed a Proof of Claim with the FDIC on October 14, 2008 (Am. Compl. Ex.

E), and the FDIC disallowed that claim on April 6, 2009.  (Am. Compl. Ex. F).  The FDIC then

filed its initial Motion to Dismiss on April 15, 2009.  (Doc. 47).  Around the same time, the

Certificate Insurers filed their Motions to Dismiss or Stay pending arbitration (Docs. 31, 38, 39),

and Deutsche Bank filed a Motion to Dismiss (Doc. 35).

     The Court held an initial oral argument on all open motions on June 15, 2009.  (Doc. 96).

Based on that argument, the Court allowed Radian to file an Amended Complaint as to the FDIC,

as Radian contended the jurisdictional issues could be cured by amendment.  (Doc. 98).  On June

23, 2009, Radian filed an Amended Complaint, which repleaded the initial Counts for equitable

relief and added two new Counts for negligence and negligent misrepresentation.  (Doc. 103).  At

the same time, Radian filed a supplemental brief asserting this Court had jurisdiction over all

claims.  (Doc. 101).  The FDIC responded with a Motion to Dismiss the Amended Complaint on

July 8, 2009.  (Doc. 105).

     In the earlier Memorandum addressing the other Defendants' Motions to Dismiss, this

Court said that it would decide the issue of jurisdiction over the FDIC at a later time.  Radian

Ins., 2009 WL 2086261, at *3, n.4.  This Court granted the Certificate Insurers' Motions to Stay

---

[1] At a hearing held on August 27, 2009, the FDIC represented to this Court that it was
currently acting only as Receiver.  (Aug. 27, 2009, Hr'g Tr. Pg. 9).

3

the litigation pending arbitration due to a mandatory arbitration provision in the Radian Insurance Policies, to which the Certificate Insurers were third party beneficiaries.  Id.  However, this Court agreed to retain jurisdiction to hear questions of interpretation, as required by the arbitration provision.  Id. at 12-14.[2]  The case was then placed on administrative suspense status.  The parties have since fully briefed the FDIC's Motion to Dismiss the Amended Complaint.  The Court held oral argument on the FDIC's Motion to Dismiss on August 27, 2009.

## II.    Legal Standards

### A.    Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

### B.    Standards of Review

#### 1.    Motion to Dismiss for Lack of Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1))

"Lack of subject matter jurisdiction voids any decree entered in a federal court and the continuation of litigation in a federal court without jurisdiction would be futile."  Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987); Dunson v. McNeil-PPC, Inc., 346 F. Supp. 2d 735, 737 (E.D. Pa. 2004).  On a motion to dismiss pursuant to Rule 12(b) (1), the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists.  Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  In determining

---

[2]On August 26, 2009, by stipulation pursuant to Fed. R. Civ. P. 41(a), this Court dismissed Ambac as a Defendant.  (Doc. 121).  Thus, the Certificate Insurers now include only FGIC and MBIA.

whether subject matter jurisdiction exists, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen v. First Fed. Savings and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). Moreover, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id.

Congress has discretion to restrict subject matter jurisdiction of federal district courts. Arbaugh v. Y&H Corp., 546 U.S. 500, 516 n.11 (U.S. 2006). "If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue." Id. at 515-16; see also Beazer East, Inc. v. Mead Corp., 525 F.3d 255, 260 (3rd Cir. 2008) (citing Arbaugh, 546 U.S. at 515-16).

### 2.   Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Iqbal clarified that the

Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), which required a heightened degree of fact pleading in an antitrust case, "expounded the pleading standard for 'all civil actions.'"  129 S. Ct. at 1953.

The Court in <u>Iqbal</u> explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  <u>Id.</u> at 1949, 1953.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 555); <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing <u>Twombly</u>, 550 U.S. at 556 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556).

## III.  <u>Party's Arguments</u>

FDIC, as Receiver for IndyMac, provides several reasons for dismissing the Complaint.  First, FDIC argues that this Court lacks subject matter jurisdiction because the anti-injunction provision in FIRREA, 12 U.S.C. § 1821(j), bars a court from hearing claims for equitable relief against the FDIC.  The FDIC argues that rescission and declaratory judgment are equitable remedies and that permitting the suit would violate the statute, which seeks to prevent any

restraints on the FDIC performing its duties as conservator or receiver.[3]

The FDIC also argues that this Court must dismiss the new tort claims in Counts III and IV, which allege negligence and negligent misrepresentation and seek damages.  According to the FDIC, Radian failed to exhaust the administrative remedies with regard to those claims, and even if Radian did exhaust those claims, the Eastern District of Pennsylvania is not the proper venue under FIRREA.  Furthermore, the FDIC suggests that these Counts should be dismissed for failure to state a claim.  Specifically, the FDIC argues: (1) Radian failed to allege a duty owed by IndyMac to Radian; (2) the gist of the action doctrine bars the tort claims; and (3) the economic loss doctrine bars the tort claims.

Radian responds that the § 1821(j) bar does not apply to suits initiated pre-receivership; Radian relies on another section of the statute, § 1821(d)(6)(A), which establishes a procedure to exhaust administrative remedies for claims against the depository institution before pursuing those claims in federal court.  Under Radian's interpretation of the statute, that provision provides an exception to § 1821(j), allowing claims filed pre-receivership to continue.  Radian insists that it has exhausted its administrative remedies for the equitable claims through its Proof of Claim and can therefore continue its action initiated pre-receivership.  Furthermore, even if § 1821(d)(6)(A) does not apply directly to § 1821(j), Radian suggests that this Court should still recognize an exception to the bar for claims filed pre-receivership.

_____

[3]The FDIC also suggests that Radian failed to properly plead a claim for rescission, as Radian did not suggest that IndyMac acted with either bad faith or actual knowledge of the falsity of its statements.  (FDIC's Motion to Dismiss at 14).  In the alternative, the FDIC asks this Court to strike the language in the Amended Complaint that IndyMac "knew or should have know" its representation was false.  Because, as explained below, this Court will dismiss Counts I and II on other grounds, it need not address those arguments.

As to the FDIC's arguments for dismissing the new damages claims, Radian responds that its Proof of Claim included claims for damages, and thus the new Counts have been properly exhausted as well.  Radian also contends that is has sufficiently pleaded facts as to IndyMac's duties to Radian.  Moreover, Radian argues that the gist of the action doctrine does not bar these claims because there is no contract between Radian and IndyMac, and Radian should therefore be able to pursue its tort claims.  Similarly, Radian suggests that an exception to the economic loss doctrine exists for parties who are not in privity of contract where the party misrepresenting information supplies that information knowing that a third party will likely rely on it.

## IV.   **Relevant Statutory Provisions**:

**Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA")**

### A.   **12 U.S.C. § 1821(j): Limitation on Court Action**

Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver.

### B.   **12 U.S.C. § 1821(d)(6)(A): Provision for agency review or judicial determination of claims**

(A)   In General

Before the end of the 60-day period beginning on the earlier of--

(i)   the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or

(ii)   the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),

the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or

8

continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)."

**C.**   **12 U.S.C. § 1821(d)(13): Additional Rights and Duties: Limitation on Judicial Review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over--

(i)     Any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as receiver; or

(ii)    any claim relating to any act or omission of such institution or the Corporation as receiver.

**V.**   **Discussion**

"It is true that FIRREA is awkwardly written and difficult to interpret."  Hudson United Bank v. Chase Manhattan Bank, 43 F.3d 843, 849 (3d Cir. 1994).  Grasping on to this aphorism, the FDIC and Radian have both presented numerous arguments, through several rounds of briefing, as to this Court's continuing subject matter jurisdiction over the FDIC with respect to the claims for equitable relief.  The parties have similarly grappled with whether Radian has satisfied the exhaustion requirements for the damages claims.  This Court will first address Radian's claims for equitable relief and will then turn to its claims for damages.

**A.**   **Claims for Equitable Relief (Counts I and II)**

The FDIC argues that § 1821(j) bars this Court from hearing Radian's claims for rescission and a declaration of rights.  Section 1821(j) prohibits a court from taking any action

9

that would restrain or effect the FDIC in the exercise of its powers.[4]  This so-called "anti-injunction provision" was "intended to permit the FDIC to perform its duties as conservator or receiver promptly and effectively without judicial interference."  Hindes v. FDIC, 137 F.3d 148, 160 (3d Cir. 1998).

To that end, numerous courts have found that the § 1821(j) bar applies to various different types of requests for equitable relief, including requests for an injunction, rescission and declaratory relief.  See, e.g., Hindes, 137 F.3d at 159-61 (holding § 1821(j) precludes declaratory and injunctive relief); Hanson v. FDIC, 113 F.3d 866, 870-71 (8th Cir. 1997) (finding that the imposition of a constructive trust would restrain or effect the FDIC and thus the Court lacked jurisdiction under § 1821(j) to award that equitable remedy ); Trinsey v. K. Hovnanian, 841 F. Supp. 694, 695 (E.D. Pa. 1994) (Pollak, J.) (holding court was barred from considering the plaintiff's request for a determination of rights with respect to an asset owned by the failed institution); Centennial Assoc. Ltd. P'ship v. FDIC, 927 F. Supp. 806, 812 (D.N.J. 1996) (explaining that "Congress crafted a broad measure depriving courts of the power to grant injunctions, specific performance, [and] rescission . . .").  The D.C. Circuit described § 1821(j) as "effect[ing] a sweeping ouster of courts' power to grant equitable remedies," including injunctive relief, declaratory relief, and rescission.  Freeman v. FDIC, 56 F.3d 1394, 1399 (D.C. Cir. 1995). See also California v. Grace Brethren Church, 457 U.S. 393, 408-09 (1982) (reasoning that there is so "little practical difference between injunctive and declaratory relief" that a statute barring injunctions must also have the effect of barring declaratory judgments).

---

[4]Provisions of FIRREA apply to both the FDIC and the RTC, so courts interpreting these statutes rely on cases involving both entities interchangeably.  Hindes, 137 F.3d at 160 n.9.

As Radian seeks such equitable relief, its claims in Counts I and II fall squarely within the reach of § 1821(j).  Thus, as a general matter, § 1821(j) extends to those claims unless Radian can show that an exception applies to the action currently before the Court.  If no such exception applies, then this Court must determine whether the relief sought will in fact "restrain or affect" the FDIC in the execution of its powers, thus invoking the § 1821(j) bar.

### 1.   Request for Rescission (Count I)

The Court turns first to Count I, in which Radian requests rescission of all three Policies.

### a.   Dismissing Claim as to FDIC

Due to the confusing nature of the Amended Complaint and the briefing, this Court was initially unable to determine whether Radian intended to assert Count I against the IndyMac entities.  Unlike Count II of the Amended Complaint, which identifies IndyMac and IndyMac Bank as specific defendants in that Count, Count I does not explicitly name the different defendants.  The paragraphs within Count I also do not mention any of the IndyMac entities.

The FDIC was evidently similarly confused and believed Radian intended to assert Count I against the IndyMac entities, as its Motion to Dismiss focuses on this first Count and how rescission would impact the FDIC, thus implicating the § 1821(j) bar.  At the same time, the FDIC's position on dismissal was also ambiguous: the FDIC was not clear whether it sought dismissal of the entire Count against all defendants or whether it merely sought its own dismissal as a defendant in that Count.  The FDIC's briefs often used general terms, suggesting only that the rescission and declaratory judgment claims are barred under § 1821(j) and requesting dismissal of "the claim."  (FDIC Motion to Dismiss Brief at 6, 7, 14).  On the other hand, the FDIC also argued that this Court cannot allow the "equitable claims to proceed *against the*

11

*FDIC*," leaving open the question of whether these claims can proceed against the other Defendants.  (Id. at 12) (emphasis added).

The Court requested the parties clarify these issues at the second Oral Argument.  At that hearing, Radian asserted for the first time that it did not intend for the FDIC to be a defendant in Count I.  (Aug.27, 2009, Hr'g Tr. Pgs. 9-10).  This intuitively makes sense, as the IndyMac entities were never parties to the policies at stake in the claim for rescission, and Radian has specifically argued that the IndyMac entities are not third-party beneficiaries under the contracts.[5] The FDIC first responded, taking as true Radian's assertion as to the intended defendants in Count I, that this Court should still dismiss the entire Count as to all Defendants.  The FDIC maintained that it would be restrained or affected by rescission of the Policies, thus invoking the § 1821(j) bar, even if it was not a defendant in Count I.  (Id. at 11-13).[6]

---

[5]The FDIC disputes Radian's characterization of IndyMac's relationship to the Policies. The FDIC contends that IndyMac was entitled to reimbursement from Deutsche Bank for advancing funds to cover costs when Radian denied a claim under the Insurance Policies. However, there is no agreement memorializing that right to recoupment.  The FDIC also insists that the parties intended IndyMac to have rights to recover under the Policies, as evidenced by its inclusion in the "Insured" provision of the Policies.  The FDIC's description of the Policies is somewhat misleading; the "Insured" section identifies the insured as Deutsche Bank, as Trustee of a Trust formed by an Agreement with IndyMac.  It does not name IndyMac as an insured party.

[6]Without deciding the issue, this Court observes that several other courts have barred claims for equitable relief directed at non-FDIC third parties, such as Deutsche Bank and the Certificate Insurers, where the relief would still effect or restrain the FDIC.  The Third Circuit in Hindes held, "the statute, by its terms, can preclude relief even against a third party" because "[a]fter all, an action can 'affect' the exercise of powers by an agency without being aimed directly at it."  137 F.3d at 160; see also In re Fed. Home Loan Mortgage Corp. Derivative Litig., — F. Supp. 2d — , 2009 WL 2421447, at *6 (E.D. Va. July 27, 2009) (citing Hindes, 137 F.3d at 159-61, and explaining that "[a] court action can 'affect' a conservator even if, as in the case at bar, the litigation is not directly aimed at the conservator itself" ); Pyramid Constr. Co., Inc. v. Wind River Petroleum, Inc., 866 F. Supp. 513, 516-18 (D. Utah 1994) (rejecting the plaintiff's argument that its request for injunctive relief was permissible because the relief was sought

However, later in the Oral Argument, the FDIC stated that it would be satisfied with the dismissal of Count I against the FDIC.  (Id. at 26).  Given these statements by the parties, this Court will formally dismiss Count I as to the FDIC in order to clarify the defendants in that Count of the Complaint for future litigation.  The request for rescission in Count I, which is currently being adjudicated through arbitration per this Court's previous Order, remains against Deutsche Bank and the Certificate Insurers.

### b.        FDIC as an Indispensable Party to Count I

At the Oral Argument, Deutsche Bank expressed concern that if this Court dismissed the FDIC as a party to Count I, this Court would need to dismiss the Count as to all Defendants. Deutsche Bank contended that the FDIC was an indispensable party under Federal Rule of Civil Procedure 19 whose presence was required for the litigation to continue.  (Aug. 27, 2009, Hr'g Tr. Pg. 56-58).  Deutsche Bank sought to preserve its rights to file a motion requesting a dismissal of the entire Count should this Court dismiss the FDIC.  (Id.). The Court declined to express an opinion on that matter at the hearing, as it had yet to rule on whether to dismiss the FDIC.  (Id. at 58).  Deutsche Bank previously raised this issue in an earlier brief responding to the Motions to Dismiss by the other Defendants.  (Doc. 71).

---

against a non-RTC defendant, which had acquired the asset at stake from the RTC, because "the plain language of the statute does not allow for such a limited reading" and "the broad and all-encompassing language evidences . . . an intent by Congress to prohibit *any* interference with the RTC as a receiver—either directly or indirectly"); Furgatch v. RTC, 1993 WL 149084, at *2 (N.D. Cal. Apr. 30, 1993) (rejecting the plaintiff's argument that § 1821(j) is inapplicable where the requested injunction is directed at two non-RTC parties because enjoining those parties indirectly enjoins the RTC); Homeland Stores, Inc. v. RTC, 1992 WL 319659, at *9 (D. Kan. Oct. 13, 1992), aff'd 17 F.3d 1269 (10th Cir. 1994) (holding the court lacked jurisdiction under § 1821(j) to enjoin a non-RTC defendant where it would have the same effect as enjoining the RTC directly).

Deutsche Bank's argument that the FDIC is an indispensable party seems to derive from Deutsche Bank's putative right to recover from the FDIC; if Deutsche Bank is found in breach of the Policies, it asserts that IndyMac's misrepresentations to Deutsche Bank regarding the mortgages were the underlying cause of that breach.  Under Rule 19(b), a party is considered indispensable if the court believes "in equity and good conscience" that the case should not proceed without the party.  Before reaching that question, the Court must determine that a party is necessary under Rule 19(a)—i.e., that it should be joined if feasible.  Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 312 (3d Cir. 2007).  If the party is necessary, Rule 19(b) sets forth factors to consider when determining whether the party is indispensable:

> [1] to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; [2] the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; [3], whether a judgment rendered in the person's absence will be adequate; [4] whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The Court has significant discretion in determining indispensability, although a finding that a party is indispensable requires dismissal of the entire case.  Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Ass'c, 844 F.2d 1050, 1053-54 (3d Cir. 1988).  Notably, a party is not indispensable merely because a defendant may have a claim for indemnity or contribution against the non-joined party.  Gen. Refractories Co., 500 F.3d at 312.

Although Deutsche Bank has revealed its intention to file a Motion requesting dismissal on these grounds, it has not done so, as this Court had not ruled, until now, on its jurisdiction over the FDIC.  However, based on the considerations outlined above, this Court believes that the FDIC is not an indispensable party.  Radian will not be prejudiced by the dismissal of the

FDIC from the Count, as it can still obtain the relief requested; in fact, as noted above, Radian never intended to assert the request for rescission against the FDIC.  On the other hand, if the entire Count is dismissed, Radian will never be able to receive an adequate remedy as it would not be able to bring the rescission claim in another venue.  Regardless of the court, the same problem with jurisdiction over the FDIC under § 1821(j) would arise, and Radian could make the same argument for dismissal of the entire claim if the FDIC is not a party.

Deutsche Bank is not entitled to use IndyMac's failure, and the FDIC's involvement, as a shield to its own liability.  Notably, Deutsche Bank could have preserved any possible indemnification or contribution claim against IndyMac by filing a Proof of Claim with the FDIC; those monetary claims fall squarely within the reach of the exhaustion procedure set forth in § 1821(d)(6)(A), and Deutsche Bank was aware of its potential claims during the exhaustion period, because Radian had already filed its Complaint against Deutsche Bank.  Those potential indemnity claims cannot serve as a basis for finding the FDIC to be an indispensable party.

### 2.  Request for Declaratory Relief (Count II)

At the August 27, 2009 Oral Argument, the FDIC maintained its position that this Court must dismiss Count II because awarding the requested declaratory relief would restrain or affect the FDIC in the exercise of its powers.  As noted above, Radian responds that because its suit was initiated pre-receivership, the § 1821(j) bar does not apply.  The Court now turns to that argument.

### a.  Radian's Argument for a Pre-Receivership Exception

Radian asserts that its request for relief falls within an exception to the § 1821(j) bar for suits initiated pre-receivership.  Although an exception for suits initiated pre-receivership is not

explicitly identified on the face of § 1821(j), Radian argues that other provisions of FIRREA can be interpreted in conjunction with § 1821(j) to imply such an exception.  Radian's argument begins by noting that the first clause of that provision reads: "except as provided in this *section*." § 1821(j) (emphasis added).  Under Radian's interpretation of the statute, § 1821(d)(6)(A), another provision within § 1821, comprises such an exception.

Section 1821(d)(6)(A) sets forth an administrative exhaustion procedure for claims against a depository institution that has been taken over by the FDIC.  As Radian interprets the statute and the case law, §1821(d)(6)(A) distinguishes between suits filed pre-receivership and those filed post-receivership, allowing a court to retain jurisdiction over suits initiated prior to the appointment of the receiver.  Radian asserts that it exhausted its administrative remedies by filing a Proof of Claim with the FDIC, and then continued the action commenced prior to the appointment of the receivership, as allowed by the statutory provision.  Radian therefore argues it is properly before the Court despite the § 1821(j) bar.

Even if § 1821(d)(6)(A) does not apply directly to § 1821(j), Radian seems to suggest that the same distinction between suits initiated pre-receivership and those initiated post-receivership recognized in § 1821(d)(6)(A) should apply to § 1821(j).  The question of whether an action requesting equitable relief that was initiated before the appointment of the receiver is barred by § 1821(j), either through direct application of § 1821(d)(6)(A) or for other reasons, appears to be a question of first impression.  While courts have interpreted both of these sections at length, they have not extensively addressed the relationship between the two, nor the issue of whether suits filed pre-receivership are otherwise treated differently under § 1821(j).  Rather, most courts have considered the relationship between § 1821(d)(6)(A) and another provision in that subsection, §

16

1821(d)(13)(D), which also limits judicial intervention in cases involving the FDIC as receiver.[7]

### i) § 1821(d)(6)(A) and § 1821(j)

As an initial matter, Radian's argument assumes that § 1821(d)(6)(A) applies to equitable relief, such as the relief at issue here, but the FDIC disputes this contention.  However, because this Court finds that § 1821(d)(6)(A) does not provide an exception to § 1821(j), the Court need not decide the question of whether § 1821(d)(6)(A) applies to equitable relief.[8]

_____

[7]Section 1821(d)(13)(D) prohibits the Court from considering "any claim or action for payment from, or any action seeking a determination of rights with respect to the assets of any depository institution for which the Corporation has been appointed receiver . . . ."  Although § 1821(j) and § 1821(d)(13)(D) both operate to bar jurisdiction, they apply in different circumstances.  To invoke § 1821(d)(13)(D), the claim must relate to the assets of the depository institution.  See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. City Savings, F.S.B., 28 F.3d 376, 384-85 (3d Cir. 1994) (determining whether claim concerned assets of depository institution as threshold issue to application of § 1821(d)(13)(D)).  Furthermore, that section is limited to depository institutions for which the Corporation has been appointed *receiver*.  Gross v. Bell Savings Bank PA SA, 974 F.2d 403, 406 n.7 (3d Cir. 1992) (noting that § 1821(d)(13)(D) applies only to claims against the RTC as a receiver, unlike § 1821(j)).

The plain language of § 1821(j) does not include either of those restrictions.  Radian's request for relief does not involve an "asset" of the depository institution for which the FDIC was appointed receiver—the request for rescission and the declaratory relief both concern insurance policies issued by Radian to Deutsche Bank and to which IndyMac was not a third-party beneficiary.  Moreover, the claims here, at least originally, were asserted against a depository institution for which Radian was appointed receiver and conservator.  Neither of the parties argue that this Court should analyze the jurisdictional question under § 1821(d)(13)(D).  However, because many cases interpreting § 1821(d)(6)(A) concern § 1821(d)(13)(D), the latter provision is still relevant here.

[8]The Third Circuit has not specifically decided whether § 1821(d)(6)(A) applies to claims for equitable relief.  In National Union, the Third Circuit considered whether the § 1821(d)(13)(D) bar applied to the same class of claims that must be exhausted under § 1821(d)(6)(A).  28 F.3d at 383-84.  For purposes of that discussion, the Third Circuit assumed that §§ 1821(d)(3), (d)5, and (d)(6) only applied to "claims," which *do not* include requests for *equitable relief*.  Id. at 388 n.12.  The Court "[left] for another day the issue of whether § 1821(d)(3), (d)(5) and (d)(6) requires or permits the RTC to consider claims not asserting a right to payment, such as [the plaintiffs]] action for declaratory judgment of rescission, in the administrative claims procedure of FIRREA."  Id.

A few months after its decision in National Union, the Third Circuit once again addressed

As one reason for rejecting the application of § 1821(d)(6)(A) to § 1821(j), the FDIC

points to the language of § 1821(j), which includes two "except" clauses.  The provision begins

by stating, "Except as provided in this section, no court may take any action . . ." and then

continues to qualify that prohibition on court action as applying "except at the request of the

Board of Directors by regulation or order." § 1821(j).  The FDIC argues that the first "except"

clause refers to the second "except clause," rather than to any other part of the statute.

This argument is without merit given the plain language of the statute.  A cardinal rule of

---

the issue of the scope of § 1821(d)(6)(A).  In Hudson United Bank v. Chase Manhattan Bank of
Connecticut, N.A., the plaintiff asserted claims specifically against the FDIC based on actions by
the FDIC after it was appointed receiver for the bank.  43 F.3d 843, 845 (3d Cir. 1994).  The
FDIC requested a change of venue under § 1821(d)(6)(A), but the plaintiff responded that §
1821(d)(6)(A) did not apply because the plaintiff asserted claims against the receiver directly,
rather than against the underlying depository institution.  Id.

In holding that § 1821(d)(6)(A) applies to claims against the receiver, the Third Circuit
noted that "[t]his holding answers the question we expressly left open in [National Union, 28
F.3d at 387 n. 12], as to the reach of § 1821(d)(13)(D)."  Hudson, 43 F.3d at 849.  The Third
Circuit explained it was holding that "the administrative claims procedures and the jurisdictional
bar have concurrent scope," ensuring that § 1821(d)(13)(D) operates as a mere exhaustion
procedure and not as "an independent and outright bar of jurisdiction."  Id. at 849-50  (citations
omitted).  While the Third Circuit indicated that it was answering the question left open in
National Union, the actual issue in Hudson only concerned whether § 1821(d)(6)(A) applied to
claims against the receiver, not whether that section applied to claims for equitable relief.  Still,
the court proclaimed that it was holding the scope of § 1821(d)(6)(A) to be concurrent with that
of § 1821(d)(13)(D), which that court had previously determined extended to claims for equitable
relief.

Although the present case does not require a decision on the reach of § 1821(d)(6)(A),
this Court does not find any logical reason to limit § 1821(d)(6)(A) to only a subset of those
claims barred by § 1821(d)(13)(D).  To the extent that courts will look to Congressional intent
where statutes are ambiguous, it is relevant that the Third Circuit in Hudson concluded that
Congress intended to create an exhaustion requirement rather than an absolute jurisdictional bar
in § 1821(d)(13)(D).  43 F.3d at 849-50.  This Court finds no evidence that Congress intended §
1821(d)(13)(D) to serve as an absolute bar for equitable belief but merely as an exhaustion
requirement for monetary claims.  The purpose of the exhaustion requirement is to allow the
FDIC to efficiently and effectively deal with claims against a failed institution without the burden
of lengthy and costly litigation.  National Union 28 F. 3d at 388.  This purpose can be served by
applying the exhaustion requirement to all types of claims, including those for equitable relief.

statutory interpretation dictates that "the starting point for interpretation of a statute is the language itself," and "the plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrable at odds with the intention of its drafters." National Union, 28 F.3d at 384 (citations omitted). Here, the first "except" clause refers to "this *section,*" which, based simply on the plain meaning of that term, indicates that any part of § 1821 may qualify § 1821(j). A comparison of the "except" clause in § 1821(j) with the "except" clause in § 1821(d)(13)(D) sheds further light on the intended meaning of the specific language in § 1821(j). The § 1821(d)(13)(D) clause refers only to "this *subsection.*" By intentionally using different language in these two "except" clauses, Congress clearly meant to provide exceptions in different circumstances. "In construing a statute, [a court] is obliged to give effect, if possible, to every word Congress used." Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979). The word "subsection" is noticeably different from the word "section." If Congress intended to restrict the exception in § 1821(j) to that subsection, it would have used the word "subsection," as it did in § 1821(d)(13)(D); to conclude otherwise would not give effect to the specific words chosen. Thus, contrary to the FDIC's interpretation, exceptions to § 1821(j) are not limited to those appearing in that subsection but may arise in any part of § 1821.

However, although § 1821(d)(6)(A) may theoretically apply to § 1821(j), that application is not readily apparent on the face of the statute, unlike the application of § 1821(d)(6)(A) to § 1821(d)(13)(D). In the prior cases applying § 1821(d)(6)(A) to § 1821(d)(13)(D), the proximity of those two provisions within the same subsection of the statute played a role in the Third Circuit's assessment of the link between the provisions. See, e.g., National Union, 28 F.3d at

19

385-86 (noting the argument that § 1821(d)(13)(D) should be interpreted with reference to the

administrative claims procedure and stating that "there is surely an interrelationship" between the

two"); <u>Rosa v. RTC</u>, 938 F.2d 383, 391-92 (3d Cir. 1991) (noting that § 1821(d)(13)(D) is an

exhaustion requirement because it refers to an exception "as otherwise provided in this

subsection," which in turn implicates the administrative claims procedure in §§ 1821(d)(5), and

(d)(6)). However, in contrast to § 1821(d)(13)(D), § 1821(j) appears in an entirely different

portion of the statute from § 1821(d)(6)(A), making the relationship between § 1821(j) and §

1821(d)(6)(A) less logically evident from the face of the statute.

The fact that § 1821(d)(6)(A) is not located within the same subsection as § 1821(j) is not

necessarily dispositive, particularly since the "except" clause in § 1821(j) refers to other passages

in the entire section, as noted above. As the FDIC further points out, § 1821(d)(6)(A) merely

establishes an administrative procedure to allow a claim to go forward. It does not speak directly

to whether the court has jurisdiction to grant the relief requested, which is the specific purpose of

§ 1821(j). As the provisions address different issues pertaining to judicial review, this court is

not naturally disposed to the conclusion that one limits the application of the other absent

compelling evidence of the interrelationship, as with § 1821(d)(6)(A) and § 1821(d)(13)(D). The

lack of clarity with regard to these provisions requires that Radian produce compelling reasons as

to why this Court should construe two seemingly unrelated provisions as inexorably bound

together. Radian has failed to do so.

Notably, a prior case in this district has invoked § 1821(j) even when a plaintiff satisfied

the requirements of § 1821(d)(6)(A), implying that § 1821(d)(6)(A) does not "trump," or

otherwise provide an exception to, § 1821(j), although the opinion did not actually consider the

interaction of the two provisions.  See A.H. Cornell & Son, Inc. v. RTC, 1994 WL 385073, at *2-6 (E.D. Pa. July 20, 1994) (Cahn, C.J.) (finding § 1821(j) barred the request for equitable relief only after concluding the court had jurisdiction because the plaintiff exhausted its administrative remedies under § 1821(d)(6)(A)).  Where a plaintiff must satisfy both § 1821(d)(6)(A) and fall outside the reach of § 1821(j) to proceed, § 1821(d)(6)(A) is not a mere exhaustion requirement for § 1821(j), as it is for § 1821(d)(13)(D), but is an independent consideration.

The Court of Appeals for the District of Columbia has also indicated that there is a difference between the effect of § 1821(d)(13)(D) and § 1821(j), and that § 1821(d)(6)(A) must therefore act independently of § 1821(j).  In National Trust for Historic Preservation in the United States v. FDIC, the Court noted that "[i]t would not be plausible, in light of § 1821(d)(13)(D), . . . to read § 1821(j) as a bar only against circumvention of the statutory administrative claims procedures [because] [s]uch a reading would make the latter provision largely redundant and would overlook Congress's casting of § 1821(j)'s directive in terms, not of precluding claims, but of shielding the FDIC's exercise of its 'powers' and 'functions.'"  995 F.2d 238, 240 (D.C. Cir. 1993).

The Court also finds it noteworthy that apparently no parties have asserted this argument before and no courts have construed § 1821(d)(6)(A) as an exception to § 1821(j). Despite its burden, Radian has not provided a single case holding that a plaintiff asserting a claim for equitable relief, whether filed pre-receivership or post-receivership, can overcome the anti-injunction provision in § 1821(j) by complying with the exhaustion procedure in § 1821(d)(6)(A).  Where the intended purpose of those two provisions is clearly different and the provisions are not linked on the face of the statute, this Court will not strains the language and

21

structure of the statute to discern a hidden meaning suggested by one of the parties.  This is particularly true in light of Congress's clear intent to impose a drastic limitation on this Court's power to provide equitable relief under § 1821(j).  Thus, without more, this Court cannot find that § 1821(d)(6)(A) was intended to act as an exception to the broadly worded § 1821(j) for suits initiated pre-receivership.

### ii)      Pre-receivership Suits under § 1821(j)

Even if § 1821(d)(6)(A) does not provide a direct exception, Radian appears to suggest that this Court should still find that § 1821(j) does not apply to this case because that provision does not bar suits initiated pre-receivership.  In support, Radian accurately notes that none of the cases cited by the FDIC regarding the application of § 1821(j) to claims for equitable relief concerned suits initiated pre-receivership; as such, Radian argues the case precedents relying on § 1821(j) to bar jurisdiction over claims for equitable relief do not control this case.  But see Spring Garden Assoc. v. RTC, 26 F.3d 412, 414, 417 (3d Cir. 1994) (noting that the district court vacated a previously issued state court injunction based on § 1821(j) after the RTC was appointed receiver and intervened, and affirming that decision where neither party objected).  However, the absence of authority on the application of § 1821(j) to claims initiated pre-receivership is not dispositive.  This Court must further examine the purpose of § 1821(j) to determine if recognizing a distinction between suits initiated pre- and post-receivership will further that purpose.

Radian's argument relies heavily on the distinction the Third Circuit has made between claims filed pre-receivership and those filed post-receivership under § 1821(d)(13)(D).  In Rosa, 938 F.2d at 393, the Third Circuit suggested that claims initiated pre-receivership are not barred

by § 1821(d)(13)(D), although district courts have since differed on whether the exhaustion

requirement in § 1821(d)(6)(A) still applies to such claims.[9]  To the extent that the various

portions of the statute should be interpreted congruently, there is some merit to the argument that

_____

[9]The Third Circuit in Rosa noted the "firmly established rule that subject matter jurisdiction is tested at the time of the filing of the complaint."  938 F.2d at 392 n.12.  That court found the § 1821(d)(13)(D) bar applied only if the RTC had been appointed receiver at the time the case came before the court, thus eliminating the application of the bar to suits initiated against the depository institution pre-receivership.  See also Praxis Props. Inc. v. Colonial Savings Bank, 947 F.2d 49, 63 n.14 (3d Cir. 1991) (explaining that where a claimant files before the institution is placed in receivership, "the failure of the thrift and the appointment of RTC as a receiver would appear not to divest the federal court of jurisdiction . . . ").  However, in New Rock Assets Partners, L.P. v. Preferred Entity Advancements, the Third Circuit expressed doubt as to Rosa's recitation of the black letter rule that jurisdiction is established at the time of filing, especially outside of the diversity context and where there is no suggestion that a party specifically asserted a claim or took other action to eliminate jurisdiction.  101 F.3d 1492, 1503 (3d Cir. 1996).

The holding in Rosa has since been interpreted differently by courts in this district with respect to whether exhaustion of claims filed pre-receivership is still required if § 1821(d)(13)(D) does not apply to those claims.  Compare Spring Garden Assoc. v. RTC, 860 F. Supp. 1070, 1072 (E.D. Pa. 1994) (Bartle, J.) (noting "Rosa teaches that where a lawsuit was pending in any court against a savings bank before an RTC receivership, the jurisdictional bar of § 1821(d)(13)(D) does not apply," and therefore where the plaintiff filed suit prior to receivership, plaintiff "need not present its claim administratively before pursuing its claims in this forum") with RTC v. Kolea, 866 F. Supp. 197, 201 (E.D. Pa. 1994) (Pollak, J.) (finding that Rosa only answers the question of whether a peremptory dismissal is required of suits initiated pre-receivership but does not preclude a court from requiring that such claims be subjected to the administrative exhaustion requirements).  See also Marquis v. FDIC, 965 F.2d 1148, 1157 (1st Cir. 1992) (filing suit pre-receivership does not excuse compliance with the administrative review process).

Regardless, the parties in this case agreed at the first oral argument that as long as a plaintiff who filed a suit pre-receivership exhausts its claims after the FDIC intervenes, the plaintiff has satisfied § 1821(d)(6)(A).  (See June 15, 2009, Hr'g Tr. Pgs. 36-37) (counsel for FDIC explained the exhaustion procedure and Radian did not dispute or object to this description).  Instead, the parties dispute whether that subsection applies to equitable claims and provides an exception to § 1821(j).  Furthermore, none of the parties dispute that Radian filed a Proof of Claim with the FDIC, at least with respect to the claims for equitable relief.  Thus, this Court does not express an opinion on the question of whether exhaustion is necessarily required under § 1821(d)(6)(A) for claims filed pre-receivership and merely notes the conflicting authority.

this Court should find that § 1821(j) does not apply to claims initiated pre-receivership where such a limitation has been found in § 1821(d)(13)(D) because the latter provision is a similar restriction on judicial review.

Simply because one Third Circuit case has distinguished between suits initiated pre-receivership and those initiated post-receivership in the context of § 1821(d)(13)(D) does not alone provide sufficient reason to make the same distinction in a different part of the same statute.  Importantly, the language in the two bars clearly reveals the different scopes of the provisions: § 1821(d)(13)(D) applies to claims against a depository institution for which the Corporation has been appointed receiver, whereas § 1821(j) generally prohibits any court action that would restrain or affect the Corporation in exercising its powers as a conservator or receiver. Rosa specifically relied on the language in § 1821(d)(13)(D) restricting that section to institutions "for which the Corporation has been appointed receiver" when concluding that such appointment was a pre-requisite to invoking the bar, thus excluding suits initiated pre-receivership.  However, similar language requiring appointment of the FDIC as receiver does not appear in § 1821(j). Thus, the language of § 1821(j) does not suggest that it is as restrictive in scope as § 1821(d)(13)(D) or that the application of that provision depends on the timing of the FDIC's intervention.

Furthermore, the purposes of the two provisions are quite different.  The restriction in § 1821(d)(13)(D) is directed at the filing of *claims* or *actions,* by claimants, concerning the assets of a depository institution.  In contrast, the restriction in § 1821(j) is directed at all actions taken by a court.  Section 1821(j) therefore applies to the court, rather than the claimant, and is not necessarily limited to circumstances related to the depository institution's assets.  Sections

24

1821(d)(13)(D) and § 1821(d)(6)(A) are both grounded in their connection to the depository institution's assets: those sections are intended to provide a mechanism for parties with claims concerning those assets to assert their claims in an efficient and non-distractive manner without resorting to litigation.  See Praxis, 947 F.2d at 64 (explaining that Congress' s overriding purpose for requiring exhaustion was to dispose of the bulk of claims against failed institutions in an expeditious and fair manner).

By comparison, § 1821(j) is consistently characterized as an "anti-injunction provision" barring equitable relief that could interfere directly with the FDIC's execution of its duties, including, arguably, the assessment of claims under § 1821(d)(6)(A).  An action by the court could just as easily interfere with the FDIC's exercise of its powers when the suit was filed pre-receivership as it could when the suit was filed post-receivership.  Radian has offered no policy reasons why Congress might have wanted to allow interference in some instances—i.e. when a suit was initiated pre-receivership—but not in others—i.e., when the suit was initiated post-receivership.  Given the "sweeping ouster" of jurisdiction intended by the § 1821(j) bar, this Court finds no reason to limit that provision's application when such a restriction is not clearly expressed in the statute.

Based on the language and purpose of § 1821(j), and without strong reasons for why that provision should treat suits filed pre-receivership differently, this Court concludes that the anti-injunction provision applies to all claims against the FDIC as conservator or receiver, regardless of when initiated.  Therefore, this Court holds that § 1821(j) extends to claims for equitable relief that are filed before the FDIC is appointed as receiver.  That provision will completely bar Radian's request for relief if such relief  "restrains or effects the exercise of powers or functions

25

of the Corporation as conservator or receiver."

### b.   Impact of Declaratory Relief on the FDIC

Accordingly, § 1821(j) applies to the request for declaratory relief and no pre-receivership exception exists to exempt Radian's claims for equitable relief.  This Court must now turn to the question of whether the equitable relief sought will restrain or affect the FDIC.[10]

In <u>Rosa</u>, to determine if a request for an injunction against the RTC should be dismissed pursuant to § 1821(j), the Third Circuit first identified the specific powers of the RTC as conservator and receiver, as outlined in FIRREA, 12 U.S.C. § 1821(d)(2), and then assessed whether the relief requested would affect those powers.  938 F.2d at 398-400.  The Court explained that the RTC's powers include: succeeding to all rights, titles, powers, and privileges of the depository institution; operating the institution, including taking over any assets, preserving those assets, and acting as directors, shareholders, and officers; as conservator, taking any such acts necessary to return the institution to a sound and solvent condition and to carry on the business of the institution; and as receiver, placing the institution in liquidation.  <u>Id.</u> at 398. The <u>Rosa</u> court noted the breadth of these powers, which it explained reflect the objectives of the statute in protecting failed institutions.  <u>Id.</u>  Emphasizing that § 1821(j) only prevents a particular remedy, the Third Circuit observed that the provision did not deprive the plaintiffs of "any other

---

[10]Despite the fact that the impact of the requested relief acts as the "trigger" for § 1821(j), the FDIC spends comparatively little time in its briefs discussing how the declaration of rights in Court II would actually restrain or affect the FDIC.  In the few brief pages directed at the issue of the requested relief's impact, the FDIC seems more concerned with the rescission claims, noting that it may be liable to Deutsche Bank or the Certificate Insurers if the policies are rescinded and that its rights to recoup payments made when Radian refused to cover the defaulted mortgages may be affected by rescission.  (FDIC's Response at 6-7.)  As this Court dismissed the FDIC as a defendant in Count I, and the FDIC agreed that it did not seek dismissal of the claim against all defendants, the FDIC's arguments as to the rescission claim are moot.

remedy that would not 'restrain or affect' the exercise of the receiver's or conservator's powers

or functions." Id. at 399.

The plaintiff in Rosa had sought an injunction requiring the depository institution and the

RTC, as conservator, to make contributions to an employee benefit plan from the institution's

assets. The court found that such an order would impinge on the statutory powers of the RTC to

"preserve and conserve the assets of the institution." Id. Furthermore, the court held that since

the institution had the right to amend, suspend, or terminate the plan at any time, the RTC

succeeded to that right and an injunction would thus interfere with the RTC's statutory power.

Id. at 399. As a result, the Third Circuit reversed the injunction entered by the district court.

Compare In re Lewis, 398 F.3d 735, 740 (6th Cir. 2005) (holding that § 1821(j) did not bar a

request for declaratory relief where the FDIC had not exercised any of its powers that would have

been directly affected by the relief sought).[11]

_____

[11]Notably, several courts have specifically held that § 1821(j) "does not bar injunctive relief when the FDIC has acted or proposes to act beyond, or contrary to, its statutorily prescribed, constitutionally permitted, powers or functions." National Trust, 995 F.2d at 240; see also Rosa, 938 F.2d at 399 (same); Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703,707 (1st Cir. 1992) (same). Initially, none of the parties suggested that the FDIC acted outside the scope of its authority or would so act if it asserted claims against Radian. However, in its most recent brief to this Court, Radian has for the first time suggested that the equitable claims against the FDIC cannot possibly interfere with its powers and functions because the FDIC was neither an insured nor a third party beneficiary under the Policies. (Radian's Supplemental Brief, Doc. 125). Accordingly, Radian reasons that the FDIC's powers and functions do not extend to those Policies, and thus § 1821(j) is not implicated by the instant action.

As noted above, the FDIC has power to assert claims against other parties in order to collect monies it believes is owed to the depository institution. Regardless of its abilities to prevail on those claims, the FDIC has the clear authority to assert claims against Radian. Yet any decision in this preemptive declaratory judgment action will prevent the FDIC from having the opportunity to even assert those claims. In determining jurisdiction under § 1821(j), this Court will not engage in a substantive analysis of the possible contractual claims the FDIC might bring, or whether the FDIC could actually recover on those claims as an Insured or third party

After careful review of the requested relief and the FDIC's stated powers, this Court finds that the declaration of rights sought here, which concerns the obligations and responsibilities between Radian and the IndyMac entities, is likely to directly affect the FDIC in the execution of its responsibilities.  First, most significantly, such a declaration may impact the FDIC's ability to assert certain claims against Radian in the future, thereby potentially reducing the assets of the depository institutions, contrary to the express goals of FIRREA.  The FDIC argues, and this Court agrees, that its ability to recover from Radian on behalf of Deutsche Bank could be affected by the declaratory judgment, and the FDIC has a right to seek such recovery since IndyMac may be liable to other parties if Radian does not pay under the Policies.  Collection of money owed to the depository institution is a clear exercise of the RTC's power to preserve assets and return the institution to a solvent state.  See Bender v. Centrust Mortgage Corp., 833 F. Supp. 1525, 1538 (S.D. Fla. 1992) (noting that the "when the RTC acts as conservator or receiver, it has broad authority to 'collect all obligations and money due the failed institution'" (quoting Joint Venture v. Onion, 938 F.2d 35, 39 (5th Cir. 1991) and 12 U.S.C. § 1821(d)(2)(B)(ii))).

In Telematics International, the First Circuit explained that it lacked jurisdiction to enter

_____

beneficiary, or on some other theory, before those claims are actually brought.  This Court will not speculate as to the nature of such claims, if brought, would be and under what legal theory the FDIC would proceed.

The § 1821(j) bar is a widely applicable, prophylactic measure intended to avoid obstacles to the FDIC's ability to recover the assets of the depository institution.  That section merely withholds a Court's ability to hear equitable claims that seek to inhibit, in a preemptive manner, the FDIC's exercise of its powers, including a future use of those powers.  However, in assessing its jurisdiction, this Court is not required by that section to consider the viability of the claims the FDIC might bring in the future as long as the FDIC would not be acting outside of its authority in bringing the claims.  Jurisdiction over the preemptive equitable claim against the FDIC does not depend on either the FDIC's intent to bring future claims or whether such claims will survive a future motion to dismiss.

28

an injunction that would restrain the FDIC's ability to collect moneys due and to realize upon assets of the depository institution.  967 F.2d at 705-06.  That court reasoned that "if such an injunction were permissible, creditors would be able to secure judicial review, in advance, of every action that the FDIC proposed to take, regardless of whether that action was clearly within the FDIC's statutory authority," and that "such judicial interference would dramatically limit the FDIC's ability to exercise its powers efficiently and effectively."  Id. at 706.  The same reasoning applies to the request for declaratory relief, as a declaration of rights would allow the plaintiff to secure review in advance, thereby preempting any action by the FDIC to collect money possibly owed to the depository institution.

Furthermore, the impact of the declaratory judgment on the FDIC is not diminished merely because the FDIC has not yet indicated its intent to pursue any claims against Radian, and thus the interference is only hypothetical at this time.  The fact that the FDIC might exercise its powers to assert claims against Radian in the future is sufficient to invoke the § 1821(j) bar.  In Courtney v. Halleran, the Seventh Circuit explained that the FDIC's potential recovery from a third party, on behalf of the depository institution, may be viewed as a future asset that the FDIC can exercise its statutory powers over.  485 F.3d 942, 949 (7th Cir. 2007).  As a result, that court held that § 1821(j) could operate to bar declaratory and injunctive relief against the FDIC in order to preserve its statutory power to collect hypothetical damages that had yet to be collected.  Id. at 949-50.

Similarly, in Pyramid Construction, the court expressed concern that entertaining the plaintiff's claim for relief might unduly chill future transactions with potential bidders on RTC assets; because the disposition of FDIC assets through such sales is one of the "quintessential statutory powers of the RTC as receiver," any court action that could undermine those potential

transactions would restrain or affect the RTC in the exercise of its powers.  866 F. Supp. at 518-19.  Noting that the "broad and all-encompassing language" of § 1821(j) evidences "an intent by Congress to prohibit *any* interference with the RTC as a receiver- either directly or indirectly," the court found that § 1821(j) barred the plaintiff's claim.  Id. at 518.  Like in Courtney and Pyramid Construction, a declaratory judgment action here that preempts the FDIC's ability to bring future claims against the FDIC would still restrain or affect the FDIC in the exercise of its statutory powers.

In addition, in National Union, the Third Circuit noted that declaratory relief can be distracting, costly and unnecessary.  28 F.3d at 388.  In deciding whether § 1821(d)(13)(D) applied to a request for declaratory relief that concerned assets of the depository institution but did not seek payment, the court explained that Congress could rationally have intended to bar such actions so the RTC could function "without the distraction and substantial cost of defending itself in court against declaratory judgment actions . . . ."  Id.  Although sympathetic to the plaintiff's argument that a declaration of rights was valuable, the court found that Congress had decided that the crisis facing failed institutions was so severe that the RTC should not spend its limited time and resources defending costly declaratory judgment actions.  Id.  In fact, it was the potential burden on the FDIC that lead the Third Circuit to conclude that Congress may have desired not to provide any administrative remedy or court access for those seeking merely a declaration of rights.  Id.  Inasmuch as the declaration of rights sought here presents a distraction that may interfere with the FDIC's ability to exercise its powers, an additional ground for invoking the § 1821(j) bar exists.

Notably, other courts have found that a declaration of rights is barred by § 1821(j).  See,

e.g., Trinsey, 841 F. Supp. at 695; Freeman, 56 F.3d at 1399.  For all of the reasons described above, this Court likewise holds that § 1821(j) bars Radian's request for declaratory relief, and as a result, Count II must be dismissed.

**c.**　　**Count II as a request for Damages**

As an alternative reason for retaining Count II, Radian contends that its request for relief was sufficiently broad to include money damages, which are not prohibited by § 1821(j).  See Hindes, 137 F.3d at 161 ("Courts uniformly have held that the preclusion of section § 1821(j) does not affect a damages claim.").  Count II of the Amended Complaint specifically requests that, besides a declaration of rights, this Court should "[g]rant Radian such other and further relief as may be necessary and appropriate under the circumstances."  (Am. Compl. ¶ 105).

The FDIC responds in its brief that the "heart of the action" is clearly not a damages claim and that Radian cannot use the vagueness in its pleadings to escape the prohibition under § 1821(j) by turning an otherwise clear request for declaratory relief into one for damages.  Several courts in this district have applied the "heart of the action" doctrine, which treats an action as a request for declaratory relief when any alternative request for damages is dependent upon the outcome of the declaratory judgment claim.  See ITT Indus. Inc. v. Pac. Employers Ins. Co., 427 F. Supp. 2d 552, 556 (E.D. Pa. 2006) (Robreno, J.); Coltec Indus. Inc. v. Cont'l Ins. Co., 2005 WL 1126951, at *2 (E.D. Pa. May 11, 2005) (Dalzell, J.); Franklin Commons E. P'ship v. Abex Corp., 997 F. Supp. 585, 592 (D.N.J. 1998) (Walls, J.).  Notably, the foregoing cases, cited by the FDIC, arise in the context of a federal district court's obligation to abstain from hearing a declaratory judgment action in light of pending state court proceedings.  The FDIC has not cited any cases applying this "heart of the action" analysis outside of that context.

31

Still, in the context of FIRREA, policy dictates that this Court not interpret Radian's vaguely worded Complaint as a means of avoiding the anti-injunction provision. Congress has expressed its clear intent to prohibit equitable or declaratory relief that may interfere with the FDIC's powers. Contrary to Radian's interpretation of its request for relief in the Amended Complaint, that language does not put the FDIC on notice that Radian was contemplating a request for damages in the declaratory judgment count. Count II is specifically labeled as a request for a declaration of rights, and the only relief directly requested within the Count is a declaration of rights. Radian does not mention any possible damages in Count II and does not provide any other factual allegations or causes of actions within that Count to support a claim for damages. Therefore, the Court will not construe Count II of the Amended Complaint as asserting latent claims in order to circumvent the § 1821(j) bar.

**B.**     **Claims for Damages (Counts III and IV)**

In its Amended Complaint, Radian has added two counts asserting independent claims for damages. As previously noted, unlike the declaratory relief requested in Counts I and II, damages are not prohibited under § 1821(j). However, as described more fully above, § 1821(d)(13)(D) bars any claims or actions relating to the assets of a depository institution for which the FDIC has been appointed receiver. That subsection begins by stating, "except as otherwise provided in this subsection," and §§ 1821(d)(5) and (d)(6) establish an administrative review procedure that allows claimants to bring or continue damages claims after the FDIC has intervened despite § 1821(d)(13)(D). Many courts have characterized these subsections as creating an exhaustion requirement, which, if not satisfied, prevents a court from considering the claims at issue. See, e.g., Rosa 938 F.3d at 391-92 (describing § 1821(d)(13)(D) as a statutory exhaustion requirement

32

that can be satisfied by complying with the procedure for administrative review in §§ 1821(d)(5) and (d)(6)); Centennial Associates, 927 F. Supp. at 810 (concluding that "[e]ssentially [§ 1821(d)(13)(D)] enunciates a statutory exhaustion requirement and deprives a district court of subject matter jurisdiction where a claimant fails to comply with the statute's directive").  Under this procedure, a claimant must file its administrative claim with the FDIC by a "bar date" in order to proceed with its claims.  Centennial Associates, 927 F. Supp. at 810.

Although Radian asserts that it has complied with the exhaustion requirement, the FDIC raises several grounds for dismissing these Counts as well.

### 1.    **Exhaustion**

The FDIC first argues that Radian has not properly complied with the exhaustion procedures set forth in § 1821(d)(6)(A) because the administrative filing did not include the claims for damages.  Radian responds that it filed a Proof of Claim with the FDIC after it was appointed Receiver, as the statute requires, and that the Proof of Claim was sufficiently broad to put the FDIC on notice of a potential claim for damages.  According to Radian, the Amended Complaint may therefore move forward, either as a new action or a continuation of a previously filed one.

Other courts considering complaints that bring claims not included within the administrative filing have concluded that such actions have not been exhausted.  For example, in Aljaf Associates Ltd. Partnership v. FDIC, the plaintiff's administrative claim included allegations of breach of contract, but the complaint also included claims of fraud.  879 F. Supp. 515, 516-17 (E.D. Pa. 1995) (Bartle, J.).  Although the plaintiff argued it had sufficiently notified the FDIC of the nature of its claims, the court found that a claim of fraud is distinct from one for breach of

contract because the legal elements and necessary evidentiary support are different for each.  Id.

Thus, the plaintiff was precluded from bringing the claims for fraud due to its failure to exhaust a

claim based on that particular legal theory.  See also McGlothin v. RTC, 913 F. Supp. 15, 18

(D.D.C. 1996) (dismissing breach of contract and negligence claims where plaintiff's

administrative claim only asserted fraudulent inducement and did not reflect the amount of

damages sought in the complaint).

Brown Leasing Co. v. FDIC emphasized the importance of filing an administrative claim

that asserts the causes of action a plaintiff plans to pursue through litigation.  833 F. Supp. 672

(N.D. Ill. 1993).  Similar to the situation here, the plaintiff in Brown Leasing had initially filed a

lawsuit pre-receivership, and then filed an administrative claim after the appointment of the FDIC,

attaching its previously filed complaint.  Id. at 674.  The plaintiff later amended its complaint,

asserting two new causes of action for breach of contract and conversion, but it did not amend its

administrative claim to assert those causes of actions within the administrative review period.  Id.

As in the current case, the plaintiff argued that the claims asserted in the original complaint, the

documents attached to that complaint, and the general request for "adjudication of the parties'

rights and liabilities under the participation agreements, sufficiently apprised the FDIC of its

'overall claims.'"  Id.  However, the court rejected the plaintiff's argument and held that the

plaintiff could not pursue the new claims.  Id. at 675.  The court explained that it could not "trace

either of these amended claims to any remnants of [plaintiff's] original complaint," and

emphasized that the facts in the original complaint did not support the new causes of action.  Id.;

see also Coleman v. FDIC, 826 F. Supp. 31, 32 (D. Mass. 1993) (concluding that plaintiff's new

claims in an amended complaint must be dismissed where those claims were not in the original

complaint attached to the Proof of Claim).

Radian's Proof of Claim contains extremely vague language and does not specifically identify a cause of action besides rescission and a declaration of rights. The Proof of Claim does not identify specific facts or claims based on IndyMac's alleged negligence or negligent misrepresentation, and it does not directly request damages. Radian does not dispute the content of its Proof of Claim and, in fact, relies on the vagueness of its filing to argue that the language is broad enough for this Court to find that Radian intended to include claims for damages.

Notably, the administrative filing refers several times to Radian's pending declaratory judgment action and describes the original Complaint and the allegations therein, which at the time of the filing did not include the damages claims in Counts III and IV. (Am. Compl. Ex. E). Radian explains that it "file[d] this Proof of Claim in an abundance of caution to preserve any and all rights and claims it may have with respect to IndyMac Bank in the Radian Action, the IndyMac Action,[12] or otherwise." (Id.). Radian further states, "This Proof of Claim shall not be deemed to be a waiver of, and is without prejudice to any and all of Radian's rights, claims and/or defenses of any nature whatsoever under the Policies, asserted in the Radian Action and/or IndyMac Action, and/or arising under any otherwise applicable law." (Id.).

Despite the unspecific language in the Proof of Claim, the Court is persuaded for several reasons that Radian has complied with the exhaustion requirement in its original administrative

---

[12]The "IndyMac Action" refers to an action commenced by IndyMac in June 2008 against Radian. That case was initially filed in California state court but was then removed to the Central District of California. The parties stipulated to a dismissal in January 29, 2009, at which time the parties agreed to assert any claims against each other in the instant action.

filing.[13]  First, Radian's Proof of Claim states that "Radian's claims against IndyMac Bank are presently contingent and unliquidated and include any and all rights and obligations owed by IndyMac Bank to Radian, including without limitation rights to payment, rights to receive performance, actions, defenses, setoffs and/or recoupments arising from or related to the issues to be adjudicated in the Radian Action and/or the IndyMac Action."  (Id.).  Thus, Radian does mention a possible right to payment, although it does not identify the legal theory on which that right is based, and the issues in the Radian Action, at the time of the Proof of Claim, did not include any claims to a right to payment.

Moreover, although the Original Complaint did not specifically allege a cause of action based on negligence or negligent misrepresentation, the factual allegations in that Complaint did suggest that the IndyMac entities had engaged in negligent behavior.  For example, the Original Complaint alleged that the Insured (Deutsche Bank) or IndyMac, "knew or should have that the representations and warranties were not true when made . . . ."  (Orig. Compl. ¶ 50).  The Original Complaint further alleges that the Insured or IndyMac "knew or should have known that, in many cases, the borrower' income was overstated . . . ." and that those Defendants "knew or should have known about he misrepresentations concerning the borrowers' employment status."  (Orig. Compl. ¶ 51).  This language is commonly used to allege acts of negligence, and although Radian did not assert a claim based on negligence, the FDIC was at least on notice that Radian believed IndyMac had acted in a negligent manner.  As this Original Complaint comprised the basis of

---

[13]Contrary to the suggestion in Brown Leasing, the FDIC asserts that the administrative filings cannot later be amended.  (FDIC's Supplemental Brief, Doc. 126).  As this Court finds that Radian's initial administrative filing satisfied the exhaustion requirement as to the damages claims later added to the Amended Compliant, this Court expresses no opinion as to the merits of the FDIC's position on the ability to amend the administrative filing.

Radian's Proof of Claim, the administrative filing also provided the FDIC with notice of potential claims based on IndyMac's alleged negligence.  The language in Radian's Proof of Claim is notably more specific than the administrative filing in Brown Leasing; unlike that case, the newly added claims here can certainly be traced back to "remnants" of the initial Complaint, and the alleged facts in that Complaint can support the new claims.

Most importantly, the FDIC acknowledged at the initial oral argument that it believed the Proof of Claim included claims for damages based on negligence.  At that hearing, counsel for the FDIC stated, "Amongst the relief they sought, the administrative claim was damages, that is not part of this Complaint."  (June 15, 2009, Hr'g Tr. Pg. 37).  Another attorney for the FDIC similarly referred to "the damages elements of the proof of claim," before arguing that those elements were not before the Court in the present action (i.e., the Original Complaint).  (Id. at Pg. 41).  These statements reflect the FDIC's actual knowledge of possible damages claims and its admission that those claims were pursued in the administrative filing, even if the claims were not specifically alleged as independent causes of action in the Original Complaint.

The FDIC's acknowledgment that the Proof of Claim asserted a claim for damages, albeit in overly general terms, was one reason the Court allowed Radian to amend the Complaint to make its damages claims more specific.  Radian has done so.  "The primary purpose underlying FIRREA's exhaustion scheme is to allow RTC to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation."  Rosa, 938 F.2d at 396.  For the reasons discussed above, the Court believes that this purpose has been satisfied by Radian's Proof of Claim.  Therefore, Radian

has exhausted the negligence claims that it subsequently added in the Amended Complaint.[14]

### 2.   Venue

The FDIC further points out in its brief that, even if Radian's Proof of Claim satisfies the

exhaustion requirement for the damages claims in the Amended Complaint, this Court is not the

proper venue to address those claims.  Under § 1821(d)(6)(A), if a claimant chooses to file suit on

a claim after it has been disallowed by the FDIC, it may do so "in the district or territorial court of

the United States for the district within which the depository institution's principal place of

business is located or the United States District Court for the District of Columbia."   This venue

selection appears to contrast with the venue for claims filed pre-receivership, which are merely

being continued, presumably in the jurisdiction where filed.

In its briefs, the FDIC essentially characterizes the new claims in the Amended Complaint

as comprising a "new" action rather than as the continuation of the one initiated pre-receivership.

Therefore, the FDIC suggests that the proper venue for these claims is either the District of

Columbia or the district in which IndyMac has its principal place of business, which is not the

Eastern District of Pennsylvania.  The unusual circumstances here—allowing new claims to be

added to a continuing, pre-receivership action—has thus produced a conflict between the venue

for those claims in the Amended Complaint initiated pre-receivership and those initiated post-

receivership.

---

[14]The FDIC responds that the "reference to 'damages' at the hearing "was to Radian's one isolated reference to 'payments' in its boilerplate claim for relief, not to Radian's legal theory that it could recover damages for any purported negligent conduct . . . ." (FDIC's Supplemental Brief, Doc. 126).  While it is true that the original Proof of Claim does not indicate a legal theory on which Radian bases any claims for "damages," the Proof of Claim refers directly back to the Original Complaint and the factual allegations in that Complaint can support a claim based on negligence or negligent misrepresentation.

Although the Court in <u>Brown Leasing</u> suggested that a plaintiff could properly add new claims by amending a Complaint filed pre-receivership, assuming those claims were exhausted, it did not address how the venue provision would come into play in that situation.  However, this Court also does need not to address that issue at this time because the parties agreed during the Oral Argument that should this Court find that Counts III and IV were exhausted, those claims may remain before this Court.  (Aug.27, 2009 Hr'g Tr. 49).  Venue is a personal privilege of the defendant and may be waived by the parties.  <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 180 (1979); <u>see also</u> 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.").  Thus, despite the arguments in the FDIC's briefs, this Court will rely on the explicit oral statements made to the Court at the hearing and therefore finds that the parties consented to venue in this forum.

### 3. <u>Motion to Dismiss Amended Complaint under Rule 12(b)(6)</u>

In addition to their statutory arguments for dismissing the damages claims, the FDIC also raises several arguments based on substantive legal principles.  As to the negligence claim, the FDIC asserts that Radian has failed to adequately allege that the FDIC owed a duty to Radian.  The FDIC also argues that both the negligence and negligent misrepresentation claims must be dismissed according to either the economic loss doctrine or the gist of the action doctrine.  Because this Court finds that the economic loss doctrine bars the claims, it will not address the FDIC's other arguments.  Thus, although the newly added claims for damages were properly exhausted and venue is appropriate in this district, Radian has failed to state a claim, and any further amendment would be futile.

39

The economic loss doctrine provides that "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage." Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175 (3d Cir. 2008) (quoting Adams v. Copper Beach Townshome Cmtys, L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003)).  As this Court previously noted, the "economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" DeFebo v. Andersen Windows, Inc., 2009 WL 2837684, at *6 (E.D. Pa. Sept. 3, 2009) (quoting Dequesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)).  According to the FDIC, Radian seeks damages for the administrative costs it has incurred while processing claims on the defaulted mortgages originated by IndyMac, as well as damages for fees and costs related to litigating this action.  The FDIC argues that Radian has not alleged any physical injury or property damage that has resulted from IndyMac's or the FDIC's alleged negligence and negligent misrepresentation.

As an initial matter, this Court notes that there is no contractual relationship between Radian and IndyMac.  However, the lack of privity between the parties does not bar the operation of the doctrine, as "controlling Federal and Pennsylvania state law hold that privity of contract is not required for application of the economic loss doctrine to [] negligence claims." Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc., — F. Supp. 2d —, 2009 WL 2513437, at *6-7 (E.D. Pa. Aug. 13, 2009) (Slomsky, J.) (citing state and federal cases).  See, e.g., Allied Fire & Safety Equip. Co., Inc. v. Dick Enters., Inc., 972 F. Supp. 922, 938 (E.D. Pa. 1997) (Joyner, J.) (recognizing that the economic loss doctrine has been applied when the parties did not have a contractual relationship); Waynesborough Country Club of Chester Cty. v. Diedrich Bolton

40

Architects, Inc., 2008 WL 687485, *7 (E.D. Pa. Mar. 11, 2008) (Pratter, J.) (noting that under Pennsylvania law, no cause of action exists between parties not in privity of contract for negligent acts resulting only in economic losses);  HCB Contractors v. Rouse Assoc., 1992 WL 332027, at *1 (E.D. Pa. Oct. 23, 1992) (Padova, J.) (" Pennsylvania law does not recognize a cause of action between parties not in privity of contract for negligent acts that result in only economic injuries."); Spivak v. Berks Ridge Corp., Inc., 586 A.2d 402, 405 (Pa. Super. Ct. 1990) (holding economic loss doctrine barred negligent construction and design claim despite absence of contractual relationship); Margolis v. Jackson, 543 A.2d 1238, 1240 (Pa. Super. Ct. 1988) ("Purely economical loss, when not accompanied with or occasioned by injury, is considered beyond the scope of recovery even if a direct result of the negligent act.").

In American Stores, Judge Slomsky distinguished an earlier Third Circuit case, Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 620 (3d Cir. 1995), which had stated that "the economic loss doctrine . . . only covers situations in which a party in privity of contract with another suffers an injury to a product itself resulting in purely economic loss."  Noting that the statement in Duquesne Light was merely dicta because a contract did exist between the parties and the court did not need to apply the doctrine in the absence of privity, Judge Slomsky concluded that the Third Circuits opinion was inapposite and did not support the argument that the doctrine did no apply where there was no contractual relationship.  American Stores, — F. Supp. 2d —, 2009 WL 2513437, at *7.  Judge Slomsky explained that applying the doctrine despite the lack of a contractual relationship is appropriate because "'to allow a [negligence cause of action for] purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action.  Such an outstanding burden is clearly

inappropriate and a danger to our economic system.'" Id., at *7 (quoting Aikens v. Baltimore and Ohio R.R. Co., 501 A.2d 277, 279 (1985)).  Where the plaintiff has failed to establish any contractual relationship or duty owed by the defendant to the plaintiff, this Court cannot recognize a cause of action holding the defendant liable.

Accordingly, the economic doctrine applies to the instant situation despite the absence of a contractual relationship between Radian and IndyMac.  With regard to application of the doctrine, Radian does not dispute that the injury alleged is purely economic, but replies that Pennsylvania law recognizes an exception to the economic loss doctrine particularly for claims of negligent misrepresentation.  In Bilt-Rite Contractors, Inc. v. Architectural Studio, the Pennsylvania Supreme Court found an exception to the economic loss doctrine where a commercial plaintiff relies on representations by an "expert supplier of information" with whom the plaintiff had no contractual relation.  866, A.2d 270, 285 (Pa. 2005).  The plaintiff in that case was a contractor who had won a construction bid with a school district in reliance on certain architectural designs provided by the district.  Id. at 272.  The Court found that the contractor could maintain a tort claim for negligent misrepresentation against the architect.  Id.  at 285.  The Court emphasized that expert suppliers of information know or intend that the information they provide will be relied on by third parties and that without an action in tort, those parties would have no contractual recourse.  Id. at 285-86.  As a result, the Court adopted § 522 of the Restatement (Second) of Torts, which allows a plaintiff to sue an expert supplier of information, such as an architect, who, in the course of business transaction or other transaction in which he has a

pecuniary interest, provides false information for the guidance of others.  Id. at 273, 285-86.[15]

Radian argues that the instant case is analogous to Bilt-Rite because Radian and IndyMac were not in privity, and IndyMac supplied information regarding the mortgages to Deutsche Bank, with the knowledge and intent that Radian would rely on such information.  However, after the decision in Bilt-Rite, the Third Circuit emphasized that the exception to the economic loss doctrine set out in that decision only applied in very limited circumstances.  Sovereign Bank, 533 F.3d at 177-78l.  According to the Third Circuit, the Bilt-Rite decision did not "severely weaken the economic loss doctrine."  Id. at 177.  Rather, the holding "was limited to those 'businesses' which provide services and/or information that they know will be relied upon by third parties in their business endeavors."  Id. at 180.  Similarly, in Excavation Technologies, Inc. v. Columbia Gas Company of Pennsylvania, the Pennsylvania Superior Court noted that the economic loss rule still applies to basic common law negligence claims and that Bilt-Rite only carved out an exception for negligent misrepresentations claims asserted under § 522 of the Restatement.  936 A.2d 111, 116 (Pa. Super. 2007).  That court explained that "application of § 522 liability for economic loss was limited to design professionals, such as architects, because they have a contractual relationship with some party to the construction project, typically the owner, from which a duty flows to foreseeable third parties to that contract."  Id.  See also American Stores, — F. Supp. 2d —, 2009 WL 2513437, at *8 ("Bilt-Rite does not preclude the application of the economic loss doctrine to all negligent or tortious conduct . . . .").

---

[15]Notably, the claim for negligent misrepresentation recognized in Bilt-Rite is viable despite a lack of privity between the plaintiff and the expert supplier of information.  Id. at 287. Considering the economic loss doctrine in this context, the Court in Bilt-Rite explained that the doctrine should not bar the otherwise cognizable tort claim; to permit such a bar to recovery after holding that the misrepresentation claim is viable would be "nonsensical."  Id. at 288.

In line with those decisions, this Court previously held that the Bilt-Rite decision was limited to "design professionals and those engaged in the business of home construction and home sales and not as to all negligent misrepresentation claims." Rock v. Voshell, 2005 WL 3557481, at *2 (E.D. Pa. Dec. 29, 2005). Based on that understanding of Bilt-Rite, this Court concluded that "[t]he fact that [the defendant] was not engaged as a professional homebuilder or architect at the time of the sale distinguishes her from the defendants in Bilt-Rite . . . ." Id.

Given these narrow interpretations of the decision in Bilt-Rite, this Court finds that Radian's claims for damages in the instant case are barred by the economic loss doctrine. These claims fall squarely outside of the exception, as limited to design professionals in Rock. More generally, IndyMac is not an "expert supplier of information" comparable to a design professional for purposes of a cognizable claim under § 522. Radian has not provided any cases recognizing a similar exception to the economic loss doctrine for parties, such as insurance companies or banks, that merely provide factual information rather than expert advice or guidance for a fee. In finding the cause of action under § 522, the Bilt-Rite court compared the misrepresentation claim against a design professional to other types of professional liability claims, such as legal malpractice and accountant malpractice. 866 A.2d at 288. Radian's claims here against the bank, as originator and servicer of loans, are clearly distinguishable from those types of professional liability claims. Therefore, the damages claims based on negligence and negligent misrepresentation in Counts III and IV must be dismissed for failure to state a claim due to the economic loss doctrine.

**VI.** **Conclusions**

For the foregoing reasons, this Court dismisses the entire Amended Complaint as to Defendant FDIC. As noted above, Radian contends that Count I was not asserted against the

FDIC, and the FDIC agrees to dismissal of that claim only as to the FDIC.  Moreover, the declaratory relief sought in Count II is barred under § 1821(j) of FIRREA.  Finally, despite satisfying the exhaustion requirement, Radian's claims for negligence and negligent misrepresentation in Counts III and IV respectively are barred by the economic loss doctrine.

An appropriate Order follows.

O:\CIVIL 07-08\08-2993 Radian v. Deutsche\FDIC Mtd memo final.wpd